JACOB STEMMER, JR., BY HIS NEXT FRIEND, JACOB STEM-
MER, SR., AND PAULINE STEMMER AND JACOB STEM-
MER, SR., INDIVIDUALLY, AND PAULINE STEMMER
AND JACOB STEMMER, SR., HER HUSBAND, PLAIN-
TIFFS-RESPONDENTS, v. WILLIAM KLINE, DEFEND-
ANT-APPELLANT.

Argued May 23, 1941—Decided May 25, 1942.

For the appellant, *William P. Braun* and *John Milton.*

For the respondents, *Andrew O. Witlreich.*

The opinion of the court was delivered by

PARKER, J.   The suit is against appellant, a physician, for
malpractice resulting as claimed in the ruination of a child
in its mother's womb at the time of the acts in question. Four
different causes of action are set out in the complaint.

1. Action by the child, which is living, but only a living
body incapable of speech or action, without sight or hearing.
The father appears as next friend.   The child is now five or
six years old.   The fundamental question on this branch of
the case is whether this action by the child will lie.

2. Claims for damages by both the parents, that they were
put to heavy expense because of the alleged malpractice.

3. A claim by the mother (sounding in contract) for physi-
cal injury to herself because of negligent and improper treat-
ment.   As to this there was a voluntary nonsuit.

4. A claim by the father as husband of the mother *per
quod,* repeating the allegations of count 3.   On this also, a
voluntary nonsuit was entered.

The original answer related only to issues of fact, but later . the defendant gave a notice, which amounts to a demurrer to the first and second counts. The court allowed the "demurrer" as an amendment to the answer, and allowed a further amendment of the answer setting up the two year statute of limitations; but this last seems to have dropped out of the case.

The important question, and the one about which the argument mainly revolves, arises under the first count, and is whether, for injury sustained by the foetus before birth because of negligence of the defendant, the child when born has a right of action. If yea, the judgment should be affirmed. If nay, it follows that it should be reversed. We have given extended and careful consideration to this question, and conclude that at common law there is no such right of action; and there being no statute establishing such right in this state, it is non-existent, and there should have been a judgment for the defendant in the trial court on the first count.

While there is some divergence of judicial opinion on the point, the great weight of authority in this country is to the effect that, as in cases of injury causing death, there was no right of action at common law, and such right existed only as the product of a statute. A glance at the decisions in a number of states, and one in Canada, will support the foregoing statement.

In Massachusetts the leading case is *Dietrich* v. *Northampton,* 138 *Mass.* 14, decided in 1884, where the court distinguishes criminal from civil liability, and at the foot of page 15 remarks: "But no case, so far as we know, has ever decided that, if the infant survived, it could maintain an action for injuries received by it while in its mother's womb. Yet that is the test of the principle relied on by the plaintiff, who can hardly avoid contending that a pretty large field of litigation has been left unexplored until the present moment."

In Rhode Island we have the case of *Gorman* v. *Budlong,* 23 *R. I.* 169; 49 *Atl. Rep.* 704, decided in 1900. The negligence there consisted of the falling of a ceiling. The child was born prematurely and died three days later, and suit was

under the Death Act. The court said in part: "Inasmuch as, to enable the plaintiff to recover, the act, neglect or default must have been such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the question at once presenting itself is, can one maintain an action for injuries received by him while in his mother's womb?" and at the conclusion of the opinion added: "In our opinion, one cannot maintain an action for injuries received by him while in his mother's womb; and consequently his next of kin, under the statute, cannot maintain an action therefor, and so the demurrer must be sustained on this ground."

In New York in 1913 we have the case of *Nugent* v. *Brooklyn Heights Railway Co.*, 154 *App. Div.* 667; 139 *N. Y. Sup.* 367, decided in the appellate division, which seems to have leaned to the view that in an ordinary case of negligence there would have been a right of recovery, but overruled the complaint because the accident occurred in a street car and the case depended upon a contract. However, in the later case of *Drobner* v. *Peters,* 232 *N. Y.* 220, decided by the Court of Appeals in 1921, that court, overruling the appellate division in an ordinary negligence case, disapproved the decision in the Nugent case and expressly held that "defendant owed no duty of care to the unborn child in the present case apart from the duty to avoid injuring the mother."

In Pennsylvania in 1924 the case of *Kine* v. *Zuckerman,* 4 *Pa. Dist. & Co. R.* 227, was before one of the inferior courts, which held that there was a right of recovery; but in 1940 the Supreme Court of Pennsylvania in *Berlin* v. *Penney Co.,* 339 *Pa.* 547; 16 *Atl. Rep.* (2d) 28, held, in a short opinion by Chief Justice Schaffer, and citing 4 *Restatement of Torts,* § 869, that there was "no warrant for holding, independent of a statute, that a cause of action for prenatal injuries to a child accrues at birth."

In Illinois there are two reported cases, the first decided in 1900, being the case of *Allaire* v. *St. Luke's Hospital,* 184 *Ill.* 359; 56 *N. E. Rep.* 638; 48 *L. R. A.* 225; and *Smith* v. *Luckhardt,* 299 *Ill. App.* 100; 19 *N. E. Rep.* (2d) 446. In both these cases the court held that there was no right of

action at common law and that if any recovery was to be had it must be by virtue of a statute.

In Michigan in the case of *Newman* v. *Detroit*, 281 *Mich.* 60, decided in 1937, there was an accident on a street car, but the case was not treated as a case of contract and in two long and careful opinions it was held that the overwhelming weight of authority was adverse to a recovery.

In Missouri, in the case of *Buel* v. *United Railways Co.* (1913), 248 *Mo.* 126; 154 *S. W. Rep.* 71, the suit was under the Death Act which was held not to apply, but the court remarked *obiter:* "We have not been able to find any precedent at common law establishing the right of a child injured while *en ventre sa mere* but subsequently born alive, to bring an action thereafter for the injuries so received."

In Alabama, in the case of *Stanford* v. *St. Louis, &c., Railroad Co.*, 214 *Ala.* 611, in 1926, the same result was reached on the same grounds.

In Texas the same rule was enunciated, though probably *obiter,* in *Magnolia Coca Cola Bottling Co.* v. *Jordan*, 78 *S. W. Rep.* (2d) 944; and in California where there was a statute providing for such cases, the court seems to have decided that the suit did not lie at common law. *Scott* v. *McPheeters*, 92 *Pac. Rep.* (2d) 678; 33 *Cal. App.* (2d) 629.

Some mention may as well be made of the Canadian case of *Montreal Tramways* v. *Leveille*, 4 *D. L. R.* 337, in which a recovery was allowed, but, as we read the deliverances of the judges, expressly on the ground of the civil law which prevailed in Canada; and finally, the Irish case of *Walker* v. *Great Northern Railway, Irish L. R.* 28 *C. L.* 69, is not very helpful, as the decision seems to have turned to some extent on the question of contract. However, it should be plain from the foregoing that in the absence of a statute, the facts of the present case do not support a right of recovery, and this was the result reached in 1940 in a similar case in our Supreme Court where Judge Barbour, sitting as a Supreme Court Commissioner under rule 94, struck out the fifth count of the complaint, claiming damages for the infant received before birth, and the sixth count, in which the father sought consequential damages. *Ryan* v. *Public Co-ordinated Trans-*

*port,* 18 *N. J. Mis. R.* 429; 14 *Atl. Rep.* (*2d*) 52. So far as we are aware, that decision was not brought into this court on appeal.

We therefore willingly subscribe to the rule formulated in 4 *Restatement of the Law of Torts,* ¶ 869, that "a person who negligently causes harm to an unborn child is not liable to such child for the harm" at common law; and there being no statute in such case made and provided, it follows that the judgment in favor of the infant must be reversed; and as this decision goes to the root of the case as regards the suit of the infant, judgment final in favor of the defendant on the first count may be entered in this court. *Smith* v. *Ocean Castle,* 59 *N. J. L.* 198; *Sullivan* v. *Visconti,* 68 *Id.* 543; *National Bank* v. *Berrall,* 70 *Id.* 767.

It remains to consider the propriety of the judgment for damages in favor of the parents on the second count. Appellant invokes the rule laid down in many cases that "an act or omission which would not support an action for damages by the person injured thereby will not furnish a ground of action by the parent or spouse of the injured person for consequential damages." We followed that rule in *Rossman* v. *Newbon,* 112 *N. J. L.* 261 (at *p.* 266), and it seems to be clearly applicable in the present case, as the second count repeats the allegations in the first count by reference, and alleges that because of the injury to the child claimed in the first count to be actionable, they were put to consequential damages. So for the reasons already stated with reference to the first count, there must be a reversal of the judgment on the second count, and judgment in this court in favor of the defendant on the entire case.

COLIE, J. (Concurring.) I am unable to agree with the holding of the majority of the court, denying the right of a child to recover for injuries negligently inflicted upon it before birth. On this phase of the case, I agree with the reasoning of the minority as expressed in the dissenting opinion of Mr. Chief Justice Brogan.

I conceive that there was an erroneous ruling of the trial court on a question of the admission of evidence and that the

evidence so admitted went to the very crux of the question for determination by the jury and may well have been the determining factor in the verdicts rendered in the trial court.

An essential ingredient of the plaintiff's case was evidence that the pelvic irradiations, *i. e.*, X-ray applications, were the cause of the infant's tragic condition when born. To establish this fact, the plaintiff called one Edgar A. Doll, a doctor of philosophy with extensive experience in the field of psychology and connections with many institutions handling mental deficients. Dr. Doll examined the child about nine months prior to the trial of the cause. His examination was not for the purpose of treatment and was at the request of counsel for the plaintiffs. Prior to the examination he was given a history of the parents and a history of the child, both histories, he testified, being essential in forming his opinion as to the cause of the infant's condition. The record will be searched in vain for any evidence of a history of the father, Jacob Stemmer, barring his testimony that he was fifty-four years old and a carpenter by trade.

During the course of his direct examination, Dr. Doll was asked:

*Q.* "Now, in your examination of the Stemmer boy in this particular case did you examine into and investigate the presumptive cause?"

*A.* "I did."

*Q.* "What did you find it to be?"

This was objected to on the ground that the answer would be based upon hearsay and that the witness could only testify as to the examination made by him, without the history. After some further questions and answers dealing with the qualifications of the witness, the examination continued:

*Q.* "Doctor, will you then tell us whether or not in order to arrive at a conclusion or establish the idiology of this child, the Stemmer boy, whether it was necessary and essential in order to arrive at a conclusion to go into the presumptive causation of his idiotcy?"

*A.* "Yes."

*Q.* "What did you find when you made that investigation?"

Objection was interposed on the two grounds that the

answer would necessarily call for hearsay testimony and that it would call for a history, and that the witness, being called as an expert, could neither use nor refer to the history, but was limited to testifying as to the result of his examination. The objection was overruled, exception taken and the ruling made a ground of appeal and argued in appellant's brief. In passing, it is of interest to note that respondents' brief does not cite a single case or authority *contra* appellant's argument. The witness, on cross-examination, admitted that his opinion could not be based entirely upon his examination of the child; that part of the needed information was given him by others, unspecified; part by members of the family; part by members of the medical profession; that he took the report of his colleague that the dosage was sufficient to produce the condition; that he was not informed of the dosage and that "some of the vital part of your [his] testimony" was based on what someone told him.

The question of the admissibility of the opinions of medical experts is one of importance in the administration of justice and it would seem that the rule in New Jersey has been settled these many years.

In 1881, Mr. Justice Scudder speaking for the Supreme Court in *State* v. *Gedicke,* 43 *N. J. L.* 86 (at *p.* 88) said: "The first exception is to allowing Dr. Bleye, a consulting physician, who was called in by her father, to testify how he examined the complaining witness, S. S., to ascertain her pregnancy, and to relate what she said to him. These declarations were made by her to the physician at the time he was called upon as an expert to determine the state of her health, and were statements of her bodily feelings, and the symptoms of her supposed pregnancy. This evidence was admissible. It is an exception to the usual rule excluding hearsay evidence, and is founded on the necessity of learning from the patient herself facts within her own knowledge, which the physician should know to form an intelligent and accurate opinion of her present health and situation. * * * If the object of the examination is to care for her health there is the strongest inducement for her to speak the truth; if she be influenced by any other consideration the jury must deter-

mine the weight of the evidence, as in other cases." The law as above set forth received the approval of the Supreme Court in *Consolidated Traction Co.* v. *Lambertson,* 59 *Id.* 297.

In *Birtwistle* v. *Public Service Railway Co.,* 94 *N. J. L.* 407, the Court of Errors and Appeals was asked to reverse the judgment of .the Supreme Court which had reversed a judgment in the trial court because of error in admitting in evidence the testimony of one Dr. Rathgeber. In sustaining the judgment of reversal the court said (at *p.* 410) : "It is obvious that the plaintiff might have elicited Dr. Rathgeber's opinion as an expert if he had had put to him a hypothetical question which assumed the facts in accordance with the theory of the plaintiff, and which the evidence tended to prove (*Daggett* v. *North Jersey Street Railway Co.,* 75 *Id.* 630) ; and the Supreme Court's reversal, upon the ground that the doctor's testimony was based upon hearsay and not a hypothetical question, is correct, and the judgment under review should therefore be affirmed."

Somewhat later the Supreme Court had occasion to say in *Altieri* v. *Public Service Railway Co.,* 101 *N. J. L.* 241, that the testimony of a medical expert as to the condition of a plaintiff, which was based to some extent upon information received from third persons, was incompetent where the expert had been employed to make an examination of the plaintiff solely for the purpose of qualifying himself as a witness, and not for the purpose of treating the patient. The court went on to say, "This is the settled rule with relation to such testimony, and its admission in the present case was, we think, harmful error." *Cf. Weh* v. *Peoples Rapid Transit Co.,* 109 *Id.* 307.

If there existed a doubt on the question, it was laid at rest by Mr. Justice Parker, speaking for the Court of Errors and Appeals in *Sandford* v. *The Chanaz Co.,* 117 *N. J. L.* 485, where he said: "We think it is perfectly plain that almost throughout the examination of these medical experts there was a violation of the general rule that where the statements of the party are made not to his own medical adviser for the purpose of proper medical treatment, but are made to medical experts for the purpose of enabling that expert to give his

opinion evidence in a court of law, they are obnoxious to the rule excluding hearsay evidence."

It seems apparent that the opinion of Dr. Doll was improperly admitted in evidence and that the error based thereon would call for a reversal if upon an examination of the whole case it appears that the error injuriously affected the substantial rights of a party. *R. S.* 2:27-363. Bearing in mind that the cause of the infant's condition was at the nub of the controversy; that the great numerical weight of the medical testimony was to the effect that the X-ray applications were not its cause; that without the testimony of Dr. Doll the plaintiffs' case on this essential aspect depended upon the opinion of a single physician, the query naturally arises as to whether the substantial rights of a party were injuriously affected. The answer seems indubitably that they were.

The judgments under review should be reversed, and the cause sent back for a new trial.

BROGAN, CHIEF JUSTICE. (Dissenting.) I am unable to agree with the majority opinion in this case. The grounds upon which the disagreement rests are therefore stated.

The facts in the case before us are: The infant plaintiff was born on May 2d, 1935. His mother, Pauline Stemmer, on three occasions prior to the birth of the infant, was subjected by the defendant physician to X-ray treatment. Prior thereto, the defendant, her family physician, had diagnosed her symptoms as caused by tumor. His examination of the patient was manual. Any one of several tests or analyses, commonly invoked in the medical profession, if made, would have revealed, with almost precise exactitude, that the patient was pregnant. The last occasion on which Mrs. Stemmer was subject to X-rays was on March 14th, 1935, about six weeks prior to the time the child was born. The infant is described by the doctors as a microcephalic idiot. It was prematurely born. It hasn't power to walk, talk, hear or see. That this condition is the result of the application of these Roentgen rays was found as a fact by the jury upon consideration of competent evidence. The issue of negligence was also concluded by the jury's finding.

The main question therefore is whether the child for these prenatal injuries, resulting from the application of the rays, has a cause of action. The opinion of the majority is that at the common law, in the absence of statute in this state, there is no right of action accruing to a child when born for injuries done to it before birth.

We turn to the common law. Blackstone has this to say: "Life is an immediate gift of God, a right inherent by nature in every individual; and it begins *in contemplation of law* [italics supplied] as soon as an infant is able to *stir* in the mother's womb * * * An infant *en ventre sa mere* is supposed in law to be born for many purposes. It is capable of having a legacy or a surrender of a copyhold estate made to it. It may have a guardian assigned to it; and it is enabled to have an estate limited to its use and to take afterwards by such limitation, as if it were actually born. And in this point the civil law agrees with ours." (The editor has a note at this point as follows: "Those who are in the womb, are considered by the civil law to exist in the nature of things as they are capable of being benefitted." *Ff.* 1.5.26). (*Jones* 220, *p. 129.)

Blackstone also says that if a woman "be quick with child and by a potion or otherwise killeth it in her womb; or if anyone beat her, whereby the child dieth in her body, and she is delivered of a dead child, this, though not murder, was by the ancient law homicide or manslaughter, citing *Brockton L.* 3.C.21." Sir Edward Coke considered it a "heinous misdemeanor."

The common law then recognizes an unborn child as a person.

Now if such child be not a person why is an abortion illegal at the common law? I do not contend that the analogy between crime and tort is a true one for all purposes. The former offends the state; the latter is an invasion of the rights of an individual. The former calls for punishment; the latter calls for compensation for a wrong. If such unborn child is to be regarded as a non-entity, actually or legally, why may it not at the common law be destroyed with impunity? Such unborn child has existence. The law does not concern itself

with non-entities. If the common law protects the rights of the unborn child and if every intendment in the law is favorable to him, the inference is inevitable that such unborn child is a person and possesses the rights that inhere in a person even though he is incapable himself to assert them. If the unborn child may not legally be deprived of his life it is hard to understand how that life may with impunity be totally impaired by the tort of a third person.

It is no answer to say that there is no remedy because a cause of action is not written down in the common law in precise formula. We cannot expect to find it charted in so many words. Rather is it implicit in the common law—else we admit that the law has no remedy for a grievous wrong. If it be a crime to inflict injury on the unborn, so that it is maimed when born, by what logic can one say that the injured child may not have damages from the wrongdoer? At common law an unborn child might be appointed executor; he might be legatee or devisee; he might have a guardian; waste on his expectant estate might be enjoined, and those things might be done at law which were for his benefit. So, too, a woman under sentence of death for a homicide may not be executed while she be quick with child. These examples from the common law are eloquent recognition of the child's personal rights and a postulate of its personality. If the civil rights of an unborn child begin with conception as to property and the like, upon what reasonable ground may there be a distinction against its rights to recover for serious personal injuries done it through the negligence of a physician?

Turning to the authorities upon which the majority opinion is predicated, we find ourselves in disagreement with the logic of their opinion. The main case seems to be *Dietrich* v. *Northampton*, 138 *Mass.* 14. That opinion says that no case has been found that held that such right of action might be maintained by the infant upon birth. This is not persuasive. It is a misapplication of the doctrine of *stare decisis*. The birth of children was managed in the olden days by practitioners of midwifery, not by doctors who specialized in obstetrics. The plaintiff in the Dietrich case was the administrator of deceased child whose mother fell on a defective

sidewalk. The accident caused a miscarriage. The child, *en ventre sa mere* at the time of the happening, died a few minutes after birth. Much of the opinion in that case is sheer *dicta*. Written in 1884, it concludes by saying no cause of action accrued because at the time of the happening the child was part of the mother (*pars viscerum matris*). With that premise stated as a fact it was easy enough to come to the conclusion arrived at; but the premise is not true as a matter of elementary physiology. While it is a fact that there is a close dependence by the unborn child on the organism of the mother, it is not disputed to-day that the mother and the child are two separate and distinct entities; that the unborn child has its own system of circulation of the blood separate and apart from the mother; that there is no communication between the two circulation systems; that the heart beat of the child is not in tune with that of the mother but is more rapid; that there is no dependence by the child on the mother except for sustenance. It might be remarked here that even after birth the child depends for sustenance upon the mother or upon a third party. It is not the fact that an unborn child is part of the mother, but that rather in the unborn state it lived with the mother, we might say, and from conception on developed its own distinct, separate personality.

Then the case of *Walker* v. *Great Northern Railway of Ireland, Ir. L. R.* 28 *C. L.* 69, decided in 1890; action by infant, injured while *en ventre sa mere,* the mother being a passenger on the railroad. The child was born crippled. The action was for unskillful performance of the contract to carry the mother as passenger. A demurrer to the declaration was sustained generally on the theory that the contract did not comprehend the unborn infant.

In the case of *Nugent* v. *Brooklyn Heights Railway Co.,* 154 *App. Div.* 667; 131 *N. Y. Sup.* 367, the complaint claiming damages for injuries done to an unborn child was rejected because the action depended on contract. In other words, the contract was to carry the mother, not the child of which the carrier had no knowledge or notice. But it seems to us that such reasoning has little to commend it. Surely a railway

carrier knows, or should know, that a certain proportion of women passengers will be with child. Much reliance was placed on the Walker case, *supra*.

A Pennsylvania case, *Berlin* v. *Penney Co.*, 339 *Pa.* 547, relied upon the rule of law as stated by *Restatement of Torts*, § 869, to the effect that no such cause of action existed at the common law. To the same effect are the other cases with which the majority opinion agreed.

The real reason for these holdings, we think and it is not at all concealed in some of the opinions, is a rule of convenience. There would be many cases, it is feared, that would be founded on fraud and possibly injustice might result from them; but these reasons should not weigh with the court. The legislature has power to deal with the situation and may prescribe limitations. The same objection may be advanced against many law actions that are encountered day after day in our trial courts. Many of them are unjustified but the fact that some people will institute ill-founded or fraudulent causes of action is no reason to deny a cause of action where by a preponderance of the credible evidence it appears that injury has resulted from the negligence of another. Here we have a wrong and no remedy. In this class of cases we recognize the difficulty of proof for both sides and if that be the objection the legislature has power to remedy it. But the principle involved in this case should be decided on rules of reason and not of convenience or lack of authority. The law of negligence is based upon two elements—(1) negligence on the part of the actor, and (2) injury to the individual. The interval between the negligent act and the injury to the person harmed is of no consequence except as to its evidential value in the matter of cause and effect. If the cause be admitted or proved what difference does it make if the injury becomes evident at a later period in the case of such infants?

The decision in *Allaire* v. *St. Luke's Hospital* (1900), 184 *Ill.* 359; 56 *N. E. Rep.* 638, follows the reasoning of the Dietrich case, *supra*, and excluded a cause of action by an infant for pre-natal injuries. We pointed out above that the opinion in that case was in part, at least, based on an erroneous fact premise.

In *Drobner* v. *Peters*, 232 *N. Y.* 220; 133 *N. E. Rep.* 567, the Court of Appeals of New York reversed an Appellate Division decision and likewise held that no cause of action arose for injuries to an unborn infant. The vote was not unanimous; the majority followed the logic of the Dietrich and the Walker cases.

A reading of all these authorities discloses that the courts recognized the beneficence of the common law for the protection of unborn infants against the criminal conduct of others and as to inheritance and property rights without saying that such protection and rights exist as exceptions or statutory declarations. But when they follow the principle of the Dietrich case and deny a cause of action to infants on the ground that the unborn child is not a separate and legal entity, they do nothing to reconcile the contradiction or at least the anomoly between the common law rights in favor of the infant, which they recognize, and the natural right of the infant to have compensation for pre-natal injuries negligently inflicted, which they do not recognize. Compare *Kine* v. *Zuckerman*, 4 *Pa. Dist. & Co. R.* 227.

The judgments should have been affirmed.

Mr. Justice Perskie, Judges Rafferty and Hague authorize me to say that they agree with the views here expressed. Mr. Justice Donges requests me to say that the facts proved supported a cause of action for the infant.

*For affirmance*—THE CHIEF JUSTICE, DONGES, PERSKIE, RAFFERTY, HAGUE, JJ. 5.

*For reversal*—THE CHANCELLOR, PARKER, CASE, BODINE, HEHER, PORTER, DEAR, WELLS, THOMPSON, JJ. 9.

*For reversal not on opinion*—COLIE, J. 1.