**Eleanor Amann, Administratrix of Estate of William Joseph Amann, Deceased, and Eleanor Amann, as an Individual, Plaintiffs-Appellants, v. Abel Faidy, Defendant-Appellee.**

**Gen. No. 10,560.**

Opinion filed April 1, 1952. Rehearing granted May 7, 1952. New opinion filed September 9, 1952. Released for publication September 25, 1952.

FINN & GEIGER, of Waukegan, for appellants; FRED
H. GEIGER, of Waukegan, of counsel.

SNYDER, CLARKE & DALZIEL, of Waukegan, for ap-
pellee; GERALD C. SNYDER, of Waukegan, of counsel.

MR. JUSTICE WOLFE delivered the opinion of the
court.

Eleanor Amann filed a suit in the circuit court of
Lake county against Abel Faidy to recover damages
for injuries which she alleged she sustained in an auto-
mobile accident between the car she was driving, and
the car Faidy was driving. She charged the defendant
with numerous acts of negligence which caused her in-
juries. The defendant filed his answer and that part
of the case is at issue, so we are not concerned about
the suit of Eleanor Amann individually.

As the administratrix of the estate of William
Joseph Amann, deceased, she filed a second count in
which she alleges that on the 26th day of December
1949, she was operating her automobile on Lewis ave-
nue at, or near the intersection of State Highway No.
120 in the City of Waukegan, Lake county, Illinois; that
while so driving she was in the exercise of ordinary
care. The defendant, Abel Faidy, negligently and care-
lessly ran and collided his automobile with the auto-
mobile of the plaintiff, causing severe personal injury
to Eleanor Amann, and caused such injuries to William
Joseph Amann, a minor, as to result in his death.

Count Two further alleges that appellant was operat-
ing her automobile in a southerly direction on Lewis
avenue at or near the intersection of State Highway
No. 120 in the City of Waukegan, County of Lake, State
of Illinois; that she was in the exercise of ordinary
care and that the deceased, riding with said appellant,
and while in the exercise of ordinary care was involved
in a collision with the appellee through appellee's negli-

38

gence and causing such injuries to the minor as to result in his death; that the appellant was duly appointed administratrix of the estate of the minor and duly qualified for said office and has at all times and now is the administratrix of said estate; that the defendant was negligent in that he was operating his automobile at a high, excessive and dangerous rate of speed; that he negligently and carelessly failed to keep a lookout ahead or laterally; that by the exercise of ordinary care he could have stopped his automobile and prevented the collision; that he failed to give a warning or signal of his approach; and at the point and place of the accident, carelessly and negligently failed to observe an electric traffic control signal, and to bring his automobile to a stop in observance of the red signal and carelessly and negligently drove into Lewis avenue striking the automobile of appellant; that the deceased, prior to and on the date of December 26, 1949, was a living human entity, an infant *en ventre sa mere;* that as a result of the actions of appellee, the deceased sustained dislocated shoulders and a ruptured spleen; that as a result of the injuries the minor died on January 26, 1950; that deceased left him surviving his father, mother and three brothers; that deceased was at all times in the exercise of all due care and caution for his own safety; that the next of kin were at all times in the exercise of all due care for the deceased's safety; that the parents and brothers have been deprived of large sums of money and valuable services which deceased would have contributed to them. Plaintiff prays judgment in the sum of Fifteen Thousand Dollars ($15,000) against the defendant.

The defendant filed a motion to strike Count II of the complaint wherein he states that the injuries alleged were sustained by an infant *en ventre sa mere;* that Count II is based solely upon a claim for prenatal

injuries; that there is no warrant of authority for maintaining the action of Count II under the law; that there is no warrant of authority for maintaining the action in Count II under any legislative enactment of the State of Illinois; that there is no cause of action under the laws of the State of Illinois or the common law. The trial court allowed the motion to strike Count II of the complaint, dismissed the cause of action set forth therein and rendered judgment against appellant for costs. From this judgment appellant appeals.

The basis for the motion to strike Count II of the complaint and entered judgment thereon, is based upon the case of *Allaire v. St. Luke's Hospital,* 184 Ill. 359. That case was decided by our Supreme Court in 1900. The facts in that case were that the mother, Ada A. Allaire, was entering St. Luke's Hospital for the purpose of being delivered of her unborn child; that while she was being conveyed to her room by an elevator there was an accident and her unborn baby was injured and was born a cripple. Several years later the child started a suit against the hospital for damages she sustained while she was an infant *en ventre sa mere.* The court followed the rule as laid down in the case of *Dietrich v. Inhabitants of Northampton,* reported in 138 Mass. 14, and there held that the action could not be maintained.

The case of *Dietrich v. Northampton, supra,* is the first recorded case in which this question was considered to come before any of our state Supreme Courts. The mother of the plaintiff between four and five months advanced in pregnancy, fell on a defective highway in the City of Northampton, she was injured and her child was also injured. The child was born prematurely and had symptoms that it was surviving for a few minutes after birth. Administration was taken out on the estate of the deceased child and an action was brought for the death of the child. The complaint

40

alleged that it was the negligence of the city in the maintenance of their sidewalk that caused the mother to fall, and the death of the child. The court in its opinion stated: "But no case, so far as we know, has ever decided that, if the infant survived, it could maintain an action for injuries received by it while in its mother's womb. Yet that is the test of the principle relied on by the plaintiff, who can hardly avoid contending that a pretty large field of litigation has been left unexplored until the present moment." In this case the court held that at the common law an unborn child was but a part of the mother, and has no existence or being which could be the subject matter of injury distinct from the mother, and that the injury to it was but an injury to the mother; that in such case there was but one person,—one life,—that of the mother. This was the same holding that our own Supreme Court followed in the case of *Allaire v. St. Luke's Hospital.*

In the case of *Magnolia Coca Cola Bottling Co. v. Jordon,* 124 Tex. Com. App. 347, 78 Southwestern Reporter, second series at page 944 decided by the Court of Appeals of Texas, Mrs. Jordon, a pregnant woman, was injured in an automobile accident which caused her to give premature birth to twin babies. One of the babies it is claimed was severely injured in the accident. The court affirmed a judgment of the lower court and held that the law gives to parents no cause of action, and the loss of a child which dies as a proximate result of injury while it is still quick in the womb of its mother even though such injuries be inflicted by the negligence of the defendant.

In *Lipps v. Milwaukee Electric Ry. & Light Co.,* 164 Wis. 272, 159 Northwestern Reporter, page 916, a similar action was started in the circuit court of Milwaukee county, Wisconsin. In this case it is claimed that the unborn child was injured through the negli-

41

gence of the railway company, which caused it to be born subject to epileptic fits. The court sustained the demurrer to the complaint and entered judgment in favor of the defendant. The Supreme Court of Wisconsin, in passing upon the merits of the controversy quoted from *Dietrich v. Northampton, supra,* and stated: ''Taking all the foregoing considerations into account, and further, that, as the unborn child was a part of the mother at the time of the injury, any damage to it which was not too remote to be recovered for at all was recoverable by her, we think it clear that the statute sued upon does not embrace the plaintiff's intestate within its meaning.''

In *Smith v. Luckhardt,* 299 Ill. App. 100, Theresa M. Joller, a minor, by her mother and next friend, Theresa M. Joller Smith, started a suit against the defendants in the circuit court of Cook county, Illinois, for alleged personal injuries she sustained prior to her birth. The defendants were physicians and the charge of negligence on their account was that they treated the mother of the child with X-rays for an alleged tumor, and at the time the mother was pregnant and as a result of the negligent treatment they had given her, the child was born deformed. The Appellate Court there followed the law, as laid down in *Dietrich v. Northampton,* and *Allaire v. St. Luke's Hospital, supra,* and held that the action could not be maintained.

In the case of *Bliss v. Passanesi,* 95 Northeastern Reporter, second series, at page 206, the Supreme Court of Massachusetts again had the question presented to it as has been in the earlier case of *Dietrich v. Northampton, supra,* and in their opinion they say that that is still the law and they follow the rule as laid down in the *Dietrich* case and held that the action could not be maintained.

In *Drabbels v. Skelly Oil Co.,* 50 Northwestern, second series, page 229, the Supreme Court of Nebraska

42

held that an unborn child is a part of its mother until birth and as such has no judicial existence and, "Child born dead could not have maintained an action at common law for injuries received by the child while in its mother's womb, though at time of injuries the unborn child was viable and capable of separate and independent existence, and hence administrator of estate of deceased child could not maintain action under wrongful death statute limiting such action to case where wrongful act is such as would, if death had not ensued, have entitled the party injured to maintain an action to recover for injuries."

The appellants insist that since the case of *Dietrich v. Northampton* and *Allaire v. St. Luke's Hospital, supra,* that medical science has progressed to such a degree that the language used in those cases is not applicable now. That it is a well-known fact that a woman eight months' pregnant or even less, can be delivered from a child and the chances of it living and becoming a normal human being is a high percentage, and that we should disregard the precedent heretofore established by our Supreme Court and follow the more enlightened rule of medical science. They have cited quite a number of cases of highest courts of our sister states, also one case from the Circuit Court of Appeals of the District of Columbia. Each of these cases cite the dissenting opinion by JUSTICE BOGGS in the *St. Luke's Hospital* case, and has followed the law as promulgated by him in his dissenting opinion, and there are strong reasons pronounced in these different opinions why the old rule of law that such an action could not be maintained, should not be adhered to.

In the case of *Cooper v. Blanck,* 39 Southern Reporter, second series at page 352, the court of appeals of Louisiana had a similar question before it. Mrs. Cooper was lying in her bed in the rented premises of the defendant, when the plaster fell from the ceiling

on the bed and struck her in the abdomen causing her to suffer great pain and, causing the premature birth of a child with which she was then pregnant some eight months. The child lived for several days, but died as a result of the prenatal injuries inflicted upon it by the falling plaster. Mr. and Mrs. Cooper then sued for the loss by the death of the child. The court reviewed numerous decisions from other jurisdictions that had this same question presented to them. In *Allaire v. St. Luke's Hospital, supra,* there was a strong dissenting opinion by JUSTICE BOGGS, and the Louisiana court quotes at length, from the dissenting opinion, which has been followed in several state courts and one federal court of appeals. ''The argument is, that at the common law an unborn child was but a part of the mother, and had no existence or being which could be the subject-matter of injury distinct from the mother, and that an injury to it was but an injury to the mother; that in such case there was but one person,—one life,—that of the mother. A foetus in the womb of the mother may well be regarded as but a part of the bowels of the mother during a portion of the period of gestation; but if, while in the womb, it reaches that prenatal age of viability when the destruction of the life of the mother does not necessarily end its existence also, and when, if separated prematurely, and by artificial means, from the mother, it would be so far a matured human being as that it would live and grow, mentally and physically, as other children generally, it is but to deny a palpable fact to argue there is but one life, and that the life of the mother. Medical science and skill and experience have demonstrated that at a period of gestation in advance of the period of parturition the foetus is capable of independent and separate life, and that, though within the body of the mother, it is not merely a part of her body, for her body may die in all of its parts and the child remain alive, and

44

capable of maintaining life, when separated from the dead body of the mother. If at that period a child so advanced is injured in its limbs or members, and is born into the living world suffering from the effects of the injury, is it not sacrificing truth to a mere theoretical abstraction to say the injury was not to the child but wholly to the mother?" The court stated: "Our conclusion is that the parents, either or both of a child, whose death, three days after birth is caused by the negligence of another, by reason of injuries inflicted before birth, and at an advanced stage of pregnancy of the mother shortly before parturition, have a right of action for damages as having survived to them and for the loss of their said child, as conferred upon them directly under the terms of the article." (The Louisiana law.)

In *Williams v. Marion Rapid Transit,* 152 Ohio St. 114, 87 Northeastern Reporter, second series, page 334 it is averred in the petition for the suit for damages against the Transit Company that Mrs. Williams was a passenger for hire on the bus operated by the company in the City of Marion, Ohio; that at that time Ruth Williams was an existing viable child, and that her mother was then pregnant with her; that the operator of the bus brought it to a sudden stop and the mother of the plaintiff, while attempting to alight from the bus, fell and was injured, which resulted in the child being prematurely born. The father of the child brought suit to recover damages for the injuries to the child which occurred before it was born. The court states that the question of law presented to this court is stated in the brief of the plaintiff as follows: "Is a viable child, injured while *en ventre sa mere,* who survives such injury, without remedy under the law of Ohio for permanent injuries suffered by reason of the negligence of another?" In this case the complaint averred that the plaintiff at the time of her injury was an existing viable

child. In the case before us the complaint alleged that at the time of the injury, William Joseph Amann was a living human entity, an infant *en ventre sa mere*. The Supreme Court of Ohio says: The word, "viable," is defined in the New Century Dictionary as, "Capable of living; physically fitted to live; of a fetus, having reached such a stage of development as to permit continued existence, under normal conditions, outside of the womb." The court quotes from Prosser on Torts 188 as follows: "When a pregnant woman is injured, and the child subsequently born suffers deformity or other injury as a result, nearly all of the courts which have considered the question have denied recovery to the child. Two reasons as given: First, that the defendant can owe no duty of conduct to a person who is not in existence at the time; and second, that the difficulty of proving any causal connection between negligence and damage is too great, and there is too much danger of fictitious claims. As to the second, it seems clear that adequate safeguards could be established by requiring sufficient proof by competent medical evidence, which is possible at least in many cases. The difficulty would seem to be no greater than in the case of many other matters of medical proof.

"So far as duty is concerned, if existence at the time is necessary, medical authority has recognized long since that the child is in existence from the moment of conception, and for many purposes its existence is recognized by the law. The criminal law regards it as a separate entity, and the law of property considers it in being for all purposes which are to its benefit, such as taking by will or descent. After its birth, it has been held that it may maintain a statutory action for the wrongful death of the parent. All writers who have discussed the problem have joined in condemning the existing rule, and maintain that the unborn child in the path of an automobile is as much a person in

46

the street as the mother, and urge that recovery should be allowed upon proper proof.'' The court concludes: ''To hold that the plaintiff in the instant case did not suffer an injury in her person would require this court to announce that as a matter of law the infant is a part of the mother until birth and has no existence in law until that time. In our view such a ruling would deprive the infant of the right conferred by the Constitution upon all persons, by the application of a time-worn fiction not founded on fact and within common knowledge untrue and unjustified.''

In *Verkennes v. Corniea,* 38 Northwestern Reporter, second series, page 838, in this case suit was brought by the father of a deceased child. The mother of the deceased child, and wife of the plaintiff, had engaged physicians to attend her in the delivery of her child. They ordered her to be taken to a maternity hospital in Minneapolis for the delivery of the child. She entered the hospital and the hospital attendants called the doctors that she had employed to attend her, but they failed to come and the child was delivered and died, as he claims through the negligence of the defendants. The wife and mother also died. The court in its opinion states: ''The question, here for determination for the first time, is whether the special administrator of the estate of an unborn infant, which dies prior to birth as the result of another's negligence, has a cause of action on behalf of the next of kin of said unborn infant under the wrongful death statute.'' The court reviews the cases of *Dietrich v. Northampton* and *Allaire v. St. Luke's Hospital, supra,* and many other cases, both for and against the maintenance of such action. The court states that nearly all cases that have held that an action could be maintained have cited with approval the language used by JUSTICE BOGGS in his dissenting opinion in *Allaire v. St. Luke's Hospital, supra.* The syllabus is written by the court and is as

follows: "Under wrongful death statute, personal representative of unborn child alleged to be viable and capable of separate and independent existence, whose death is alleged to have been caused by the wrongful acts or omissions of the physician in charge of the mother and of the hospital in which she was confined, may maintain an action therefor on behalf of the next of kin of such deceased child."

In *Bonbrest v. Kotz,* 65 Federal Supplement, page 138, Betty Gay Bonbrest, an infant, by her father and next friend, started a suit against J. Kotz and Morton S. Kaufman to recover damages, for injuries sustained by the infant when it was allegedly taken from its mother's womb through professional malpractice. After commenting upon the *Dietrich v. Northampton* case the court states: "As to a viable child being 'part' of its mother—this argument seems to me to be a contradiction in terms. True, it is in the womb, but it is capable now of extrauterine life—and while dependent for its continued development and sustenance derived from its peculiar relationship to its mother, it is not a 'part' of the mother in the sense of a constituent element—as that term is generally understood. Modern medicine is replete with cases of living children being taken from dead mothers. Indeed, apart from viability, a non-viable foetus is not a part of its mother." The court held that the action could be maintained.

In *Damasiewicz v. Gorsuch,* 79 Atlantic Reporter, second series, page 550, Thomas Joseph Damasiewicz, an infant, by his father and next friend, brought an action against Daniel T. Gorsuch to recover for the injury sustained in an automobile action while *en ventre sa mere.* The lower court held that the plaintiffs were not entitled to recover, but the court of appeals of Maryland held that a child who was injured in an automobile accident, while *en ventre sa mere,* and was pre-

48

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮

maturely born permanently blind in both eyes because of the accident, was entitled to recover from drivers of automobiles for such injuries, in the event that the drivers were proven negligent. In the course of the opinion we find: "A foetus in the womb of the mother may well be regarded as but a part of the bowels of the mother during a portion of the period of gestation; but if, while in the womb, it reaches that prenatal age of viability when the destruction of the life of the mother does not necessarily end its existence also, and when, if separated prematurely, and by artificial means, from the mother, it would be so far a matured human being as that it would live and grow, mentally and physically, as other children generally, it is but to deny a palpable fact to argue there is but one life, and that the life of the mother. Medical science and skill and experience have demonstrated that at a period of gestation in advance of the period of parturition the foetus is capable of independent and separate life, and that, though within the body of the mother, it is not merely a part of her body, for her body may die in all of its parts and the child remain alive, and capable of maintaining life, when separated from the dead body of the mother. If at that period a child so advanced is injured in its limbs or members, and is born into the living world suffering from the effects of the injury, is it not sacrificing truth to a mere theoretical abstraction to say the injury was not to the child, but wholly to the mother?" After reviewing many cases both pro and con, the court concludes with: "When we examine the reasons behind them, we find them based upon an outworn point of view, now rejected by modern medicine, and rejected by the later cases. We think the modern view is the correct one, and, since there has heretofore been no occasion to decide what is our common law and we must for the first time decide it now, we think our decision should be made on the basis of

49

present-day knowledge. To hold otherwise would be a step backward, and would substitute a plebiscite of states for reason."

In the case of *Bliss v. Passanesi,* 95 Northeastern Reporter, second series, page 206, Ernest D. Bliss as administrator, brought a court action against Passanesi to recover for the death of a child from injuries sustained while in her mother's womb. The Supreme Court of Massachusetts adhered to the rule as laid down in the case of *Dietrich v. Northampton, supra,* but in the course of their opinion after quoting from decision contrary to *Dietrich v. Northampton, supra,* they use this language: "We readily concede the strength of these grounds, but there is also strength in the arguments to the contrary, including that based upon the practical difficulty of reliable proof. We do not intimate what our decision would be if the question were presented for the first time."

The latest case that has been called to our attention is *Woods v. Lancet,* 303 N. Y. 349, 102 N. E. second series, page 691, decided by the Court of Appeals of the State of New York, Dec. 1, 1951. In the earlier case of *Drobner v. Peters,* 232 N. Y. 220, 133 N. E. 567, the court had had a similar suit before it and followed the general theory of *Dietrich v. Northampton, supra.* In the *Woods* case the facts are very similar to the one that we are now considering. During the course of the opinion we find this language: "What, then, stands in the way of a reversal here? Surely, as an original proposition, we would, today, be hard put to it to find a sound reason for the old rule. Following Drobner v. Peters, supra, would call for an affirmance but the chief basis for that holding (lack of precedent) no longer exists. And it is not a very strong reason, anyhow, in a case like this. Of course, rules of law on which men rely in their business dealings should not be changed in the middle of the game but what has that to do with

bringing to justice a tort-feasor who surely has no moral or other right to rely on a decision of the New York Court of Appeals? Negligence law is common law, and the common law has been molded and changed and brought up-to-date in many another case. Our court said, long ago, that it had not only the right, but the duty to re-examine a question where justice demands it.''

''The sum of the argument against plaintiff here is that there is no New York decision in which such a claim has been enforced.'' Winfield's answer to that, see U. of Toronto L. J. article, *supra,* p. 292, will serve: ''if that were a valid objection, the common law would now be what it was in the Plantagenet period.'' And we can borrow from our British friends another mot: ''When these ghosts of the past stand in the path of justice clanking their mediaeval chains the proper course for the judge is to pass through them undeterred.'' Lord Atkin in *United Australia, Ltd. v. Barclay's Bank, Ltd.* (1941) A. C. 1, 29. ''We act in the finest common-law tradition when we adapt and alter decisional law to produce common sense justice.'' The court then overruled its former decision and held that the action could be maintained.

In the case of *Moore v. Moyle,* 405 Ill. 555, our Supreme Court states: ''The law is not static and must follow and conform to changing conditions and new trends in human relations to justify its existence as a servant and protector of the people and, when necessary, new remedies must be applied where none exist.''

In *Field v. People,* 2 Scammon 79, the trial court had failed to adhere to the law as has been promulgated by our Supreme Court and the Supreme Court on commenting upon that fact uses this language: ''As he cannot accord with the Court in the principles laid down, he cannot apply them. The doctrine, before this decision, was considered well settled, that when the

51

supreme judicial tribunal of a State had declared what the law was on any point, when the same point became again in litigation, all other courts were bound to conform to its decision. A different rule would destroy all that stability and uniformity in the rules of law, which is so essential to the administration of justice, and the safety of the citizen. If every judge can decide according to his private sentiment, without regard to precedent and authority, there may be as many rules of decision as there are circuits; and the decision of one day would furnish no rule for the decision of the next. 'Judges,' says the Circuit Court, 'are bound, in deciding a point of law, to follow a preceding decision upon the same point. Yet, if such decision is founded in error, they are not bound by it.' The correctness of this principle cannot be controverted, when applied to a court of equal or superior authority with the one deciding the point. But is it not obvious that the judge has misapplied the principle, in assuming for the Circuit Court authority to reverse a decision of the Supreme Court? Who does not see that such doctrine is subversive of the fundamental principles of the government? It is reversing the order of authority prescribed by the Constitution and the law, and rendering nugatory the right of appeal. It will readily be admitted that an erroneous decision ought not to prevail, but who has the right to declare it so? This authority includes the right of supervision and control, and if the Circuit Court has it, in reference to a decision of the Supreme Court upon the same principle, a justice of the peace will have it, in reference to a decision of the Circuit Court; and one step further will give the right of supervision to the parties in the cause; thus resolving all authority back into the original elements. This would be the consequence of carrying out the position assumed.''

52

Under the doctrine as enunciated in *Field v. People, supra,* we are constrained to follow the law as promulgated in *Allaire v. St. Luke's Hospital, supra.* The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*