**Lester MITCHELL, Administrator of Infant Mitchell, Deceased, Appellant,**

v.

**Doyle COUCH, Appellee.**

Court of Appeals of Kentucky.

Dec. 2, 1955.

Isaac Turner, Hyden, for appellant.

Brown & Bird, London, for appellee.

STEWART, Chief Justice.

This is an action wherein damages are sought by the administrator for the wrongful death of an unnamed infant whose decease was alleged to have been solely caused by a prenatal injury. The lower court, after a pre-trial conference, sustained the motion of appellee, Doyle Couch, to dismiss the complaint for the reason that it failed to state a claim upon which relief may be granted. This appeal is from the order of dismissal entered.

The facts in this case, set forth by the complaint and by one deposition, namely, that of Doctor Ernest A. Golia, are: On June 27, 1953, Lester Mitchell, accompanied by his wife, Gracie, was driving his one-half-ton pickup truck on Highway No. 80 in Leslie County in the direction of Woo-

ten. At or about the hour of 2:40 p. m., after Mitchell had just crossed over a creek by traversing what is locally known as Cutshin bridge on this highway, he averred Couch, without giving any warning, approached so near him in a Cadillac car Couch was operating at a rapid, careless and reckless rate of speed that he, Mitchell was forced to drive his truck into the ditch line to his right in order to avoid a collision. As a result of this mishap, Mitchell's truck was completely demolished, he was severely injured and his wife, Gracie, was fatally hurt.

The record further discloses Mitchell had, prior to the accident, taken his wife to the hospital at Hyden, she being in the last stage of pregnancy and believing she was due to give birth to a child, but it developed she had been found not ready to be confined. She was on her way back home to await its delivery, riding in the front seat with Mitchell, when the latter's truck was wrecked and Mitchell and she were injured. Soon afterwards, Gracie was transported to Mount Mary Hospital at Hazard for treatment for her injuries, and while there she was delivered of a baby boy on June 29, 1953, which was born dead. Gracie herself died immediately thereafter.

Doctor Golia, who attended Gracie the whole time she was at Mount Mary Hospital and who was introduced as a witness for Couch, testified she had been very seriously injured and was in a state of shock on the occasion she was first admitted to the hospital. She had gradually improved but when she went into labor she was still in such a grave condition that she was unable to survive the added strain childbirth placed upon her. He also stated he had listened to her abdomen several hours after she came in as a patient, in an attempt to hear the child's heart sounds, and none could be detected. According to him, there were no direct, visible marks of injury on the dead infant's body. This witness did not venture an opinion as to how the infant came to its death.

The complaint alleged the child died as a result of injuries suffered by it and produced by Couch's negligence while in the womb of its mother. Mitchell, who qualified as administrator, sought damages therefor in the sum of $20,000. The first paragraph of Couch's answer questioned whether an action may be maintained in this state for the wrongful death of an infant arising out of prenatal injuries. The lower court adjudged the first paragraph constituted a complete defense to this action. The trial judge was of the opinion that no provision has been made by any statute of Kentucky for a recovery based upon the wrongful death of a child originating from injuries sustained prior to its birth.

It is argued by Couch in this appeal that any right to prosecute this cause must be obtained by and through Section 241 of the Constitution of Kentucky and KRS 411.130, enacted pursuant thereto, since at common law there is no right to recover damages in a death case.

Section 241 reads in part: "Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same. * * *"

The pertinent portion of KRS 411.130, enacted to carry out the purpose of this constitutional provision, states: "(1) Whenever the death of a person results from an injury inflicted by the negligence or wrongful act of another, damages may be recovered for the death from the person who caused it, or whose agent or servant caused it. If the act was willful or the negligence gross, punitive damages may be recovered. The action shall be prosecuted by the personal representative of the deceased."

The precise issue before us is whether an administrator may recover for the death of a child caused by injuries received en ventre sa mere through the negligence of another. In interpreting the language of

Section 241 of the Constitution and KRS 411.130, above quoted, the difficulty arises in determining whether a child en ventre sa mere is a "person" within the meaning of these two provisions. The question presented has not been passed upon by any decision of this forum, but it has received much consideration in late years in cases before the courts of other states and in reviews in law journals.

Beginning with the early case of Dietrich v. Inhabitants of Northampton, 1884, 138 Mass. 14, 52 Am.Rep. 242, it was held no action would lie for the death of a child resulting from injuries received by a mother who slipped upon a defect in a highway of the defendant town. The fall caused a miscarriage and the child was too little advanced to endure its premature birth, although there was some evidence indicating it lived ten or fifteen minutes. The court pitched its decision upon the grounds that no case had ever allowed a surviving infant to recover for injuries received while in its mother's womb and that, as an unborn child is a part of the mother and has no separate existence, there is no duty of care owed it. Adhering to this Massachusetts holding in principle the subsequent cases advanced further reasons for rejecting causes of action founded on before-birth traumas. These were the presence of inherent difficulties in proving a causal connection between the act of negligence and the resultant injury and the fear of opening the door to fictitious claims which might be trumped-up by false testimony. See Allaire v. St. Luke's Hospital, 1900, 184 Ill. 359, 56 N.E. 638, 48 L.R.A. 225; Gorman v. Budlong, 1901, 23 R.I. 169, 49 A. 704, 55 L.R.A. 118; Buel v. United Railways Co., 1913, 248 Mo. 126, 154 S.W. 71, 45 L.R.A.,N.S., 625; Drobner v. Peters, 1921, 232 N.Y. 220, 133 N.E. 567, 20 A.L.R. 1503; Magnolia Coca-Cola Bottling Co. v. Jordan, 1935, 124 Tex. 347, 78 S.W.2d 944, 97 A.L.R. 1513; Drabbels v. Skelly Oil Co., 1951, 155 Neb. 17, 50 N.W.2d 229; Amann v. Faidy, 1952, 348 Ill.App. 37, 107 N.E. 2d 868.

However, since 1921 numerous and impressive precedents have been developed in favor of allowing a right of action for prenatal injuries, either under general tort law or under applicable wrongful death statutes. Springing from the dissenting opinion of Mr. Justice Boggs in the case of Allaire v. St. Luke's Hospital, supra, several states have forged ahead by adopting the so-called "viability theory" which conditions the right of action upon a sufficient showing that the child when injured by tort was capable of living outside its mother's uterus. In defining viability, a federal district court in Bonbrest v. Kotz, D.C.1946, 65 F.Supp. 138, 141, made this explanatory statement: "It (the child), has, if viable, its own bodily form and members, manifests all of the anatomical characteristics of individuality, possesses its own circulatory, vascular and excretory systems and is capable now of being ushered into the visible world."

Relying upon the view that a viable child is in fact a separate person, many leading American courts have recognized the right to maintain an action for the wrongful death of an unborn child where its capacity for an independent existence was established. See Cooper v. Blanck, La.App.1923, 39 So.2d 352; Verkennes v. Corniea, 1949, 229 Minn. 365, 38 N.W.2d 838, 10 A.L.R.2d 634; Jasinsky v. Potts, 1950, 153 Ohio St. 529, 92 N.E.2d 809; Tucker v. Howard L. Carmichael & Sons, Inc., 1951, 208 Ga. 201, 65 S.E.2d 909; Damasiewicz v. Gorsuch, 1951, 197 Md. 417, 79 A.2d 550.

The view adhered to in many jurisdictions, denying a cause of action for prenatal injuries, has been severely criticized by legal writers as illogical and outdated. For a thoroughgoing treatment of the rationale presented by these writers see Muse and Spinella, "Right of Infant to Recover for Pre-Natal Injury", 36 V.L.Rev. 611 (1950). Cason and Collins, "May Parents Maintain an Action for the Wrongful Death of an Unborn Child in Missouri?", 15 Mo. L.Rev. 211 (1950); Note, 44 Yale L.J. 1468 (1935), wherein the case of Magnolia

Coca-Cola Bottling Co. v. Jordan, supra, was criticized; Note, 35 Cornell L.Q. 648 (1950); Comment, 6 Vand.L.Rev. 802 (1952); Comment, 34 Minn.L.Rev. 65 (1949); Comment, 48 Mich.L.Rev. 539 (1950); Comment, 50 Mich.L.Rev. 166 (1951). Prosser justifies the right to sue in an action such as the one under discussion in these words in his treatise on Torts at page 190: "All writers who have discussed the problem have joined in condemning the existing rule, in maintaining that the unborn child in the path of an automobile is as much a person in the street as the mother, and urging that recovery should be allowed upon proper proof."

Two states, New York and Missouri, have recently reversed their former holding that damages are not allowable where a child received prenatal injuries as a consequence of another's negligent act. In Woods v. Lancet, 1951, 303 N.Y. 349, 102 N.E.2d 691, 695, 27 A.L.R.2d 1250, the New York Court of Appeals held that a right of action may be maintained in behalf of an infant who by a defendant's negligence sustained disabling injuries while in its mother's womb during the ninth month of her pregnancy. That opinion in overruling Drobner v. Peters, supra, gave this as one of its prime reasons for such action: "'To deny the infant relief in this case is not only a harsh result, but its effect is to do reverence to an outmoded, timeworn fiction not founded on fact and within common knowledge untrue and unjustified.'" *Woods - born alive!*

The Supreme Court of Missouri in Steggall v. Morris, 1953, 363 Mo. 1224, 258 S. W.2d 577, the most recent case on this subject, in overruling Buel v. United Railways Co., supra, after declaring a viable child who sustained prenatal injuries three days before birth and died 18 days thereafter was a "person" within the meaning of a wrongful death statute, held the parents of the child could recover damages for its death from the person responsible therefor.

The Supreme Court of Massachusetts, although it denied the right of an administrator to recover for the death of a child from injuries sustained en ventre sa mere, reluctantly following the precedent laid down in Dietrich v. Northampton, supra, did, however, note a decisional trend in other states and Canada toward giving relief in such cases, and it made this statement in respect to the problem: "We do not intimate what our decision would be if the question were presented for the first time." See Bliss v. Passanesi, 326 Mass. 461, 95 N.E.2d 206. In New Jersey a strong five-to-ten dissent, written by the Chief Justice, unsuccessfully urged that a child viable but in utero, if injured by tort, should when born be allowed to sue. See Stemmer v. Kline, 1942, 128 N.J.L. 455, 26 A.2d 489, 684.

The most cogent reason, we believe, for holding that a viable unborn child is an entity within the meaning of the general word "person" is because, biologically speaking, such a child is, in fact, a presently existing person, a living human being. It should be pointed out that there is a definite medical distinction between the term "embryo" and the phrase "viable fetus." The embryo is the fetus in its earliest stages of development, but the expression "viable fetus" means the child has reached such a state of development that it can presently live outside the female body as well as within it. A fetus generally becomes a viable child between the sixth and seventh month of its existence, although there are instances of younger infants being born and surviving. See 15 Mo.L.Rev., p. 218.

The classical judicial statement as to this subject was made by Mr. Justice Boggs in his dissent in Allaire v. St. Luke's Hospital, supra [184 Ill. 359, 56 N. E. 641], wherein he said: "* * * if, while in the womb, it (the unborn child) reaches that prenatal age of viability when the destruction of the life of the mother does not necessarily end its existence also, and when, if separated prematurely, and

by artificial means, from the mother, it would be so far a mature natural human being as that it would live and grow, mentally and physically, as other children generally, it is but to deny a palpable fact to argue there is but one life, and that the life of the mother."

In the case at bar this Court has concerned itself with the inquiry, generally speaking, as to whether a prenatal injury arising out of a negligent act affords a basis for an action for damages in behalf of the personal representative of the child, if the infant's death flows directly therefrom. In this connection, we conclude that when a pregnant woman is injured through negligence and the child, if it be a viable infant within the definition recited above, suffers death as a consequence, a right of recovery exists to the personal representative, provided the causal relation between the negligence and the damage to the child be established by competent evidence.

One reason that is often advanced why cases of this character should be dismissed relates to the supposed difficulty of proving or disproving that certain injuries befell the unborn child, or that such injuries produced the defects discovered at birth or later. Such difficulty of proof is not special to this particular kind of action; and it is beside the point, anyhow, in determining whether such an action is maintainable. Every day in our trial courts and before administrative tribunals, particularly the Workmen's Compensation Board, such issues are disposed of, and in the eyes of the law it is a wrongful concept that uncertainty of proof can ever destroy a legal right. The questions of causation and reasonable certainty which arise in these cases are no different in kind from the ones which have arisen in thousands of other negligence cases decided in this state in the past. See Woods v. Lancet, supra.

The facts in this case do not show whether the infant's death en ventre sa mere was directly due to Couch's negligent act, since there is an absence of proof on this point. At the pre-trial conference the only issue determined was one of law, that is, whether the right to bring an action like the one we are here examining is maintainable in this jurisdiction. There was a denial of the affirmative allegations of the complaint, and the court below properly made no attempt to determine any controverted issue of fact at the conference. See Clay, CR 16, Comment 3, subsection 6. Nor is it within the province of the trial judge at such a conference to determine a question of law before all the evidence is presented. This is particularly true where, as in the case before us, a full disclosure of the facts may, or may not, make it possible to apply the principles we have set forth.

We believe the complaint stated a cause of action under KRS 411.130, because we conclude a viable child is a "person" within the meaning of this statute. The trial judge therefore committed a prejudicial error when he dismissed the complaint.

Wherefore, the judgment is reversed with directions that it be set aside and for such further proceedings as are not inconsistent with this opinion.