## Vassill's Adm'r et al. v. Scarsella.

May 15, 1942.

## As Extended on Denial of Rehearing.

Nov. 20, 1942.

154

Charles J. Walker, H. C. Kauffman and George S. Hawke for appellants.

Clay & Clay and Davis, Boehl, Viser & Marcus for appellee.

Opinion of the Court by Judge Thomas—Affirming.

On February 5, 1940, while riding in an automobile on a public highway in Garrard county, as an invitee of defendant and appellee, Leslie Scarsella—the owner and then operator of the automobile—Helen Vassill, as the result of a collision with another automobile, was instantly killed, she then being a young lady 16 years of age, and residing with her father in his home in Cincinnati, Ohio, the defendant being a resident of the state of California; therefore, both defendant and deceased were nonresidents of this Commonwealth. In due time appellant and plaintiff below, John Vassill, father of deceased, qualified in Hamilton county, Ohio, in which he resided, as personal representative of the estate of his deceased daughter. As such—and without complying with the provisions of Section 3878 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes—he filed this ordinary action in the Garrard circuit court against defendant to recover damages from the latter because of his alleged negligence in the operation of his automobile, then being driven by him, so as to cause the collision, resulting in the

death of plaintiff's daughter as an invitee of defendant, to whom he owed the exercise of ordinary care for her safety.

Defendant was brought before the court by serving summons on the Secretary of State of this Commonwealth, pursuant to the provisions of Chapter 80, page 247 of the Session Acts of 1930, and which is now Sections 12-1 to and including 12-7, in our present edition of the Statutes, supra, the validity of which was sustained by this court in the case of Hirsch v. Warren, 253 Ky. 62, 68 S. W. (2d) 767. The petition on its face expressly reveals the facts we have recited. Defendant made no objection to the jurisdiction of the court over his person by questioning in any manner the Process Serving Act above referred to, and his first appearance was to move that plaintiff execute bond for costs, inasmuch as he was a non-resident of this state, which was complied with. The next step in the case taken by defendant was to require plaintiff to file with his petition, as an exhibit thereto, the orders of the foreign court in Ohio appointing him administrator of the estate of his daughter, to which he referred in his petition but had not filed the exhibit as therein stated. That motion was also complied with by plaintiff. Defendant then filed a general demurrer to the petition, which the court sustained on July 30, 1941, with leave to amend.

On August 4th thereafter, plaintiff in conjunction with a domestic or ancillary administratrix of the deceased—who was appointed as such by the county court of Garrard county on July 30, 1941—tendered an amended petition setting out the fact of the appointment of the ancillary representative (Frankie Kauffman) and adopted the averments of the original petition, filed solely by the foreign representative and asked that the domestic representative "as ancillary administratrix be permitted to prosecute this action, and that she be made a party plaintiff thereto," ets. Objection was made by defendant to the filing of that amendment upon the ground that more than a year had elapsed from the time of the fatal accident to the deceased and the appointment of the ancillary domestic representative of her estate, and as a consequence more than a year had also elapsed following such accident at the time of the tendering of the amendment. The court sustained the objections of defendant and declined to permit the amend-

ment to be filed, followed by a dismissal of the petition after plaintiff declined to plead further, to reverse which this appeal is prosecuted.

The prescribed limitations to recover for the wrongful causing of the death of another is, by Section 2516 of our statutes, supra, required to be brought within "one year next after the cause of action accrued, and not thereafter." In the case of Faulkner's Adm'r v. L. & N. R. R., 184 Ky. 533, 212 S. W. 130, the statute was construed to require the action to be brought by the administrator of the deceased person within one year from his death as the period when "the cause of action accrued" and not one year after the appointment of the representative. So that in this case, plaintiff's petition and the tendered amended petition showed these expressly stated facts—that plaintiff possessed no authority to bring this action in the courts of Kentucky to recover for the negligent death of his daughter, also occurring in Kentucky, save and except what might emanate, if any, from his appointment as administrator of his daughter's estate by the foreign probate court in Cincinnati, Ohio; and that the local ancillary representative of the same estate was not appointed until limitations had run in Kentucky against the right to prosecute such an action by anyone, and of course, the same time had expired when the tendered pleading was offered.

It is the contention of counsel for plaintiff that although the tendered amendment was offered after the expiration of the limitation period for bringing the action by the proper plaintiff (the ancillary domestic one), and although such proper plaintiff was not qualified to be such until after the expiration of the same period, yet the amendment was not the beginning of a new action by the only one who could maintain it under our law (having its inception from the time of the tendered amendment), but that it related back to the date of the filing of the action by plaintiff as foreign administrator of his deceased daughter, and thereby saved the action from death under the sentence of the limitation statute. The opposite contention is made by counsel for defendant, and which opposing contentions present the first question to be determined.

The personal representative who may bring such an action is one appointed by, or who qualifies in, the proper

court in this Commonwealth, and which excludes the right of a foreign representative to maintain such an action, and especially so if he, she or it has not complied with the provisions of Section 3878, supra, of our statutes. Whether that statute applies only to actions to recover debts of a decedent in jurisdictions foreign to that of the appointment of the personal representative, and has no application to recover for injuries or death produced by tortious action committed in foreign jurisdictions, is one not urged or discussed. In any event, the action as originally brought, as we have seen, was shown by the petition to be one which the plaintiff therein had no right in law to maintain, and being such it would logically appear to possess no legal effect whatever, and which this court so held in the somewhat early case of Louisville & N. R. R. v. Brantley's Adm'r, 96 Ky. 297, 28 S. W. 477, 49 Am. St. Rep. 291. The domestic case of Marrett v. Babb's Ex'r, 91 Ky. 88, 15 S. W. 4, also to the same effect, is cited in the opinion in the Brantley case as sustaining the conclusion therein approved. That holding (in the Brantley opinion) has never been departed from by any later opinion rendered by this court, but has been approved many time by subsequent opinions, which are listed in Shepherd's Kentucky Citations, page 330.

It is, therefore, clear that the original action filed by the foreign administrator as plaintiff, not being maintainable, could not and did not have the effect to toll or suspend the running of the statute of limitations against the maintenance of the action and, of course, did not have the effect to preserve the right of action in favor of some future qualified person to maintain it, after more than a year had expired from the commission of the tort as a foundation of the action. That being true, it would necessarily follow that an attempt after limitation had run to substitute as plaintiff in the cause the name of one possessing legal authority to maintain it in lieu of the one who originally filed it—but possessing no legal authority to do so—would not relate back to the time the original action was filed by the wholly disqualified plaintiff so as to preserve the right of the tardy quallified plaintiff to maintain the action against the local limitation statute. Such interpretation was made and applied by this court in the cases of Faulkner's Adm'r v. Louisville & N. R. R. Co., supra; Fentzka's Adm'r v. Warwick Const. Co., 162 Ky. 580, 172 S. W. 1060; Ban-

non v. Fox, 199 Ky. 262, 250 S. W. 966, and Louisville & N. R. R. v. Brantley's Adm'r, (on second appeal) 106 Ky. 849, 51 S. W. 585. To the same effect also is the text in Thompson on the Law of Negligence, Vol. 6, page 148, Par. 7017.

In the Fentzka case [162 Ky. 580, 172 S. W. 1061], the amended petition tendered after due qualification of a domestic, or domesticated foreign personal representative, was held to be "in point of fact an intervening petition to be made a party plaintiff, and to be substituted as plaintiff in the action * * *. This amended petition was in truth the pleading of a new party attempting to be substituted as plaintiff, and it will readily be seen that its purpose was to avoid the plea of the statute of limitations; more than a year having elapsed after Fentzka's death until the valid reference to Sea, as public administrator, so that a new action could not have been maintained." The court then stated that an amendment to a pleading necessarily assumes that the one offering it has a cause pending which he desires to amend, and that a tendered pleading by one who, up to the date of the tender, was not a party to the litigation, could not be considered as an amendment to the alleged pleading of one who had no right to file it, and that such offered pleading, styled as an amendment by such stranger to the litigation, is a misnomer, since its legal effect is an effort to intervene in the cause and not to amend any pleading in the cause of a party to the litigation prior to the attempted intervention, and that such consequence and results follow such efforts, although the tendered pleading by the stranger to the litigation may be denominated an amendment.

Such was the situation in the Fentzka case, which was brought by the public administrator of Jefferson county at a time when the cause of action had not been properly referred to him so as to entitle him to bring it as such public fiduciary. His authority in that respect was later extended to him as the law directs, and he then attempted to file an amended petition after he had been qualified and given the right to do so, but at that time the cause of action had become barred. The situation was, therefore, strictly analogous to what would have happened in this case if the amendment had been tendered by the same plaintiff who filed the original petition, after compliance with Section 3878, supra, of our statutes (if that

would confer upon him the right), each of which pleadings would in that event run in his own name and in his same fiduciary capacity. But, under the ruling in the Fentzka case, such practice will not be given the effect of prolonging the period of limitations against the maintaining of the action by the giving of any saving effect to the filing of the original action by one then having no legal authority to file it. In other words, the domestic cited cases deny the right of an interpleader to give his pleading a retroactive effect so as to consider it as reaching back and commencing at the time of the filing of the original action in which he seeks belated appearance for the assertion of some right which he may enforce in the litigation.

The effect of the interpretation referred to is, that the action is commenced at the time the intervening petition is tendered by the one having the right to maintain the action, and that its original filing prior to that time by one not having the right to maintain it, has no effect in prolonging the limitation against the right to maintain it. It, therefore, follows that the action in this case as attempted to be maintained by the ancillary and domestic representative of the deceased was barred by the statute of limitations, and which appeared upon the face of the pleadings in the cause, both filed and tendered.

In such case—and especially where the non-resident administrator (as is the case here) is undertaking to sue for tort committed in Kentucky—we held in the cases supra, and those of Bancamerica-Blair Corp. v. State Highway Commission, 265 Ky. 100, 95 S. W. (2d) 1068; Jackson's Adm'r v. Asher Coal Co., 153 Ky. 547, 156 S. W. 136; Webb v. Kersey, 255 Ky. 217, 73 S. W. (2d) 4; Hogg's Rec'r v. Hogg, 265 Ky. 656, 97 S. W. (2d) 582, that the defect in the pleading, showing on its face no right in the pleader to file it, may be reached by a general demurrer and is not one reachable only by a special demurrer when the pleading merely shows ''incapacity'' in the pleader to litigate; there being a vital recognized distinction, as pointed out in the cases referred to, between legal incapacity to sue, and legal right to sue. Therefore, all of the argument of plaintiff's counsel with reference to waiver, as applicable only to special demurrers, has no bearing upon the case, and the authorities cited in support of such urged waiver are wholly irrelevant.

It is vigorously argued by plaintiff's counsel that the 1930 Act, supra, relating to the service of process on non-resident defendants in some way, not made clear to us, had the effect to domesticate, so to speak, the parties to such litigation in which the service therein provided for was made against the non-resident defendant, and which applied to both plaintiff and defendant in an action so brought, although the plaintiff at the time was an acknowledged non-resident of this state. Of course, we cannot agree with any such contention, since that statute did not purport to, nor did it, enact anything except with reference to the service of process against a non-resident defendant. Neither do the cases of Teets v. Snider Heading Mfg. Co., 120 Ky. 653, 87 S. W. 803, and Cincinnati, N. O. & T. P. Ry. Co. v. Goode, 163 Ky. 60, 173 S. W. 329 —relied on by plaintiff's counsel to sustain his contention that the tendered amendment in this case should have been filed—have any bearing upon the point involved, since in the first one of them the tendered amendment was offered before limitations had run on the right to maintain the action, and the holding in the second case (which itself is not altogether applicable) was but the following of a construction placed on a Federal statute by the Federal courts. A reading of the Teets opinion will show that the court referred therein to the case of Leatherman v. Times Co., 88 Ky. 291, 11 S. W. 12, 3 L. R. A. 324, 21 Am. S. Rep. 342, in which this court held, in an action brought by a plaintiff having the right to maintain it, against the business name of a partnership, alleging that it was a corporation (but which was untrue), could not thereafter be amended by making the individual partners defendants after limitations had run on the cause of action so as to avoid the bar of the statute. In doing so we necessarily held that the action was never commenced against the individual partners until the amendment making them such was filed, but at that time the cause of action was barred and the trial court properly so held. If an amendment relating exclusively to new parties defendant may not be given a retrospective effect a fortiori, the same rule should be applied to defective parties plaintiff in similar circumstances.

Appellant's counsel in his final argument for a reversal of the judgment against his client presses and stresses the two rights guaranteed by the Federal Constitution, one in Amendment XIV, Section 1, there-

of guaranteeing due process, and Article IV, Section 2, guaranteeing to the citizens of one State immunities and privileges extended to citizens of the State in which such discrimination is allaged to have been made. Many cases are cited by counsel which he insists support such contention but which a reading of them will demonstrate that counsel is mistaken in his interpretation of them to the situation here involved. On the contrary, it has been the law, as declared by the Courts from the taking effect of our Constitution containing such guarantees, that a reasonable classification may be made against non-residents of the State making the classification, provided the classification is reasonable and the foreign rights attempted to be asserted in the Courts of the State, foreign to the probate appointing Court, may be done within the jurisdiction of the invoked forum. Noonan v. Bradley, 9 Wall. 394, 400, 19 L. Ed. 757; Maysville St. R. & Transfer Co. v. Marvin, 6 Cir., 59 F. 91; Brooks v. Southern Pac. Co. C. C., 148 F. 986, 996; Louisville & N. R. Co. v. Brantley's Adm'r, 96 Ky. 297, 28 S. W. 477, 49 Am. St. Rep. 291. A dependable text authority to the same effect is Schouler on "Executors and Administrators" Second Edition, paragraph 164, and in Sixth Edition, Vol. 4, paragraph 3495, page 2799. Besides, it is extremely probable (and some of the cases and authorities so indicate) that the constitutional guarantees were intended to apply to the protection of strictly personal rights, and not to those of foreign fiduciaries, who after their appointment become an officer (of limited duties) of the probate court making the appointment. But, however the latter statement may be, it is quite certain that the contentions so made by appellant's counsel in this, his final argument, have been denied by both Federal and State Courts from the beginning of the taking effect of our present Constitution, and especially as applied to foreign representatives acting in their fiducial capacity.

We therefore conclude that no provisions of the Federal Constitution nor rights conferred by it have been denied the foreign representative in whose fiducial capacity the action was originally brought.

Wherefore, for the reason stated, the judgment is affirmed.