**MODERN BAKERY, INC., and James Combs, Appellants,**

**v.**

**Nathan BRASHEAR, Administrator of the Estate of Michael Brashear, Appellee.**

Court of Appeals of Kentucky.

May 13, 1966.

Rehearing Denied Sept. 23, 1966.

Willis W. Reeves, Reeves, Barret & Cooper, Hazard, for appellants.

Scott E. Duff, Duff Arnett, Hazard, for appellee.

PALMORE, Judge.

Michael Brashear, 7 years of age, was killed by a bread truck while attempting to cross a highway near his home in Perry County. His father, alleging himself to be the administrator of Michael's estate, filed this suit in the Perry Circuit Court seeking damages for wrongful death against the owner and operator of the truck. The case eventually went to trial before the court without a jury and resulted in a judgment for plaintiff in the amount of $37,200 and costs. Defendants appeal.

The fatal accident occurred on November 5, 1962, and the suit was filed on September 24, 1963. On January 10, 1964, before answering,[1] defendants moved to dismiss on grounds of no jurisdiction over the plaintiff, no jurisdiction of the subject matter, and failure to state a claim. The motion was supported by affidavits showing that there was no order of record in the office of the Perry County Court Clerk appointing Nathan Brashear as administrator of his son's estate. By amended motion it was asserted specifically that Brashear lacked capacity to maintain the action. The motion was sustained with leave to amend the complaint. Plaintiff then filed an amended complaint alleging that he had been appointed as administrator by the Perry County Court on September 17, 1963, but that through inadvertence the order was not entered of record until January 22, 1964. It was alleged also, with copies of the various documents attached as exhibits, that on the latter date the county court entered further orders amending the original September 17 order and directing its entry of record nunc pro tunc. Defendants then renewed their motion to dismiss and submitted a further

affidavit showing that the records of the county court clerk contained no written application whatever for administration of the estate of Michael Brashear. The motion was overruled, following which defendants answered, pleading among their defenses plaintiff's lack of capacity and the one-year statute of limitations. KRS 413.140. A motion by defendants for a summary judgment also was overruled.

It was the opinion of the circuit court that whatever may have been plaintiff's status theretofore, the orders entered by the Perry County Court in January of 1964 effected a valid appointment as administrator of the estate and that the amended complaint related back to the filing of the original complaint so as to defeat the plea of limitations.

In Vassill's Adm'r. v. Scarsella, 292 Ky. 153, 166 S.W.2d 64 (1942), a wrongful death action was brought in this state by an administrator appointed in Ohio. Later, an ancillary administratrix was duly appointed in this state, and she joined with the original plaintiff and tendered an amended petition in the wrongful death suit. The anniversary of the fatal accident fell between the filing of the suit and the tender of the amendment. This court held that for the purposes of limitations the action had not been commenced within one year after the cause of action accrued. However, under the Rules of Civil Procedure, which became effective July 1, 1953, we think there can be little doubt that the amendment in the case now before us relates back to the original filing.[2] CR 15.03 provides as follows:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

CR 15.03 is the same as F.R.C.P. 15 (c). "If the opposing party is reasonably

---

1. The record does not disclose whether the response was timely, but in any event the question was not raised.

2. Hence it becomes unnecessary to consider the efficacy of the county court's nunc pro tunc order.

informed of the general wrong complained of and the background out of which the claim arose, then he may begin preparation of his defense when the original claim is asserted against him. Under such circumstances the statute of limitations should not constitute a bar * * * Under the same Federal Rule it has been held that where the real party in interest was substituted as a *plaintiff* after the statute of limitations had run on the original cause of action, the amendment related back and the cause of action by the new plaintiff was not barred." Clay's Kentucky Practice, CR 15.03, Comment 3.

"Rule 15(c) is based on the concept that a party who is notified of litigation concerning a given transaction or occurrence has been given all the notice that statutes of limitation are intended to afford * * * Where plaintiff seeks to change the capacity in which the action is brought * * * there is no change in the parties before the court, all parties are on notice of the facts out of which the claim arose, and relation back has been allowed." Moore's Federal Practice, R 15(c), pars. 15.15 [3] and [4], pp. 1021, 1039. See, for example, Rejsenhoff v. Colonial Nav. Co., 35 F.Supp. 577 (S.D. N.Y. 1940); Fierstein v. Piper Aircraft Corporation, 79 F.Supp. 217 (M.D.Pa. 1948). See also Missouri, K. & T. R. Co. v. Wulf, 226 U.S. 570, 33 S.Ct. 135, 57 L.Ed. 355 (1913).

The case of Totten v. Loventhal, Ky., 373 S.W.2d 421 (1963), is inapplicable because, as noted in the opinion, the attempted amendment asserted "a new and different cause of action."

■ This means, of course, that even if to this date Nathan Brashear has not secured a valid appointment as administrator of his son's estate, and if the judgment were set aside for that reason, he could still remedy the omission and proceed by further amendment notwithstanding the statute of limitations. Cf. Rejsenhoff v. Colonial Nav. Co., 35 F.Supp. 577 (S.D.N.Y. 1940). As a practical matter, therefore, subjecting the order of appointment to a collateral attack on the ground that there was no written and verified application as required by KRS 395.015 would simply call for a repetition of the trial for the sake of a procedural technicality that has no bearing on the merits of the controversy. The decedent having been an unmarried infant, any recovery under the wrongful death statute goes to his father and mother. KRS 411.130(2). They are the persons with first priority in the appointment. KRS 395.040. The county court order shows that Nathan Brashear took the proper fiduciary oath and executed bond, thus subjecting himself to the jurisdiction of the court if he had not done so theretofore by the filing of a formal written application. Under these circumstances we are unwilling to say the appointment was void.

Coming now to the merits of the case, the principal issue is whether there was enough evidence of negligence on the part of James Combs, the truck driver, to support a verdict.

The accident occurred on a level stretch of two-lane paved highway running in a north-south direction in a rural section of Perry County. Michael had alighted from a school bus at a country store on the west side of the road. His father, Nathan Brashear, operated a garage some distance to the south and on the other side of the road. There was a beaten path along the west shoulder of the highway two feet or so from the pavement. Michael walked southward on this path until he was within "a few feet" of being opposite the garage. Combs, the only eyewitness, was driving his truck northward at a speed, he said, of about 40 m. p. h. He first observed the boy walking toward him along the west shoulder of the highway when they were "several hundred feet" apart. He did not apprehend any reason to slacken his speed or take any other precaution against the event that the child might dart into the road until it actually happened. Michael suddenly ran straight across the road toward a culvert a little north of his father's garage, and Combs immediately applied his brakes and swerved

to the right in an effort to avoid striking him. He was not successful. Michael was hit by the front of the vehicle, around its left headlight, at a point very near the east margin of the pavement. Both he and the truck went on over the culvert head and into a water-filled ravine. There was no other traffic in the vicinity at the time of the accident.

The truck left skid marks some 70 to 80 feet along the highway and shoulder before going off the embankment. The left mark began at a point six feet farther along than the one on the right, in view of which the plaintiff, who qualified as an expert, theorized that the brakes were defective because they took hold on the right side before the left and that this caused the truck to swerve to its right. Even, however, if this hypothesis is accepted, it would require a prohibitive degree of speculation to conclude that the condition of the brakes was a proximate causal factor in the accident. It seems to us that the sufficiency of the evidence to sustain the verdict must be tested on the strength of what, if anything, the circuit court acting in lieu of a jury could reasonably have determined that the driver of the truck should have done, but did not do, before the child made his precipitate move to cross the highway.

It was held in the recent case of Thomas v. Gates, Ky., 399 S.W.2d 689 (1966), that if a small child is in a position along or near a street where in the exercise of ordinary care a motorist should see him, "the motorist has the duty to anticipate that the child may suddenly dart into the street and he must be prepared for that contingency." In this respect the same laws of human nature apply in the country as in town, and the duties of the motorist are no different. The appellant Combs frankly admitted he saw Michael walking near the edge of the road while they were still an ample distance apart. In his testimony he made no claim that he took any measures, such as slackening his speed, in anticipation that the boy might suddenly indulge the well-recognized disposition of young children to run heedlessly across roads and streets. He explained that he was proceeding at a "reasonable" speed, but a speed that is otherwise reasonable may not be so when a child or children are along the roadside. Our conclusion is that the evidence was sufficient to authorize a verdict; hence the finding of negligence was not clearly erroneous. CR 52.01.

The life expectancy of the decedent was 63 years. We cannot accede to the contention that $37,200 was an excessive award.

The judgment is affirmed.