Arleliah F. COX, Appellant,

v.

Catherine O. COOPER, Individually and Catherine O. Cooper, as Administratrix of the Estate of Infant Cooper, Deceased, Appellee.

Catherine O. COOPER, Individually and as Administratrix of the Estate of Infant Cooper, Deceased, et al., Appellants,

v.

Arleliah F. COX, Appellee.

Court of Appeals of Kentucky.

May 31, 1974.

William F. Boelter, Cincinnati, Ohio, James C. Ware, Ware, Bryson, Nolan & West, Covington, for appellants.

Robert C. Cetrulo, O'Hara, Ruberg & Cetrulo, Covington, for appellees.

PALMORE, Justice.

In a collision between an automobile driven by her husband, Clifford Cooper, and one driven by a young lady named Arleliah Cox, Catherine Cooper, who was in the eighth month of pregnancy, received injuries that resulted in the death of her unborn child and necessitated a hysterectomy, which of course prevents her bearing any more children. She brought this suit against both drivers in her individual capacity and as administratrix of the child's estate. A jury awarded $53,660.10 for her personal injuries and special damages and $40,196.00 (funeral expenses and destruction of earning power) for the wrongful death of the infant. Pursuant to KRS 454.040 the jury was permitted to and did severally apportion the damages 50% against Miss Cox and 50% against Cooper, reflecting the extent to which it found the accident attributable to the respective negligence of each. Judgment was entered accordingly, except that from each award for the wrongful death the amount of $10,000, which otherwise would have been the father's beneficial interest in the recovery, was deducted. Cf. KRS 411.130(2) and Bays v. Cox' Adm'r, 312 Ky. 827, 229 S.W.2d 737, 740 (1950).

We have before us an appeal by Miss Cox, an appeal and cross-appeal by Catherine Cooper (both individually and as administratrix), and an appeal by Catherine's attorneys. Clifford Cooper did not appeal.

The grounds for Miss Cox's appeal are that she should have had a directed verdict and judgment n. o. v., the instructions were erroneous, and the awards were excessive. The ground for Catherine's cross-appeal is that the judgment should have been for joint rather than several relief against the two tortfeasors, and the ground for her appeal is that she should have had a default judgment against the estate of Lillie M. Givens, which owned the automobile being driven by Clifford Cooper at the time of the accident. The ground for the appeal by counsel is that in calculating the exclusion from the wrongful death awards the trial court should have allowed for an attorney fee based on the full amount of the verdict rather than half.

The accident happened after 9:00 P. M. on April 20, 1969, at the intersection of Greenup and Fifth Streets in Covington, Kentucky, Greenup being a one-way street for northbound traffic and Fifth being a one-way street for eastbound traffic. The intersection was controlled by a traffic light hanging over its center. Each street was four lanes wide with the inner lanes for through traffic and the curb lanes for parking except that as it approached the corner of Fifth Street the easterly curb lane of Greenup Street was marked for right-turns only (into Fifth) and was a "no-parking" area designated as a bus-stop.

The Cooper vehicle was going north on Greenup Street and the Cox automobile was moving east on Fifth Street. According to the Coopers, they approached in the right-hand "through" lane, stopped at the intersection in obedience to a red light, and then started forward when it changed to green. It was their intention to pass directly through and continue northward on Greenup Street. Clifford did not observe the Cox vehicle coming from the left until the moment of collision. Catherine saw its lights an instant before the impact. Clifford says his car was struck by the Cox vehicle. It came to rest on Fifth Street heading east. The Cox vehicle came to rest heading north in a yard at the northeast corner of the intersection.

It is undisputed that the Cox automobile was traveling in the right-hand "through" lane of Fifth Street. Miss Cox and her witnesses testified that when they entered the intersection the light was green but changed to yellow as they passed under it, that two cars were stopped at the intersection in the "through" lanes of Greenup Street, and that the Cooper automobile passed around these two stopped vehicles to the right, using the east or curb lane which was marked for right-turns only, and struck their car about the time it was crossing the pedestrian cross-walk traversing Fifth Street along the east side of Greenup Street. They said they were in the intersection when they first noticed the Cooper automobile coming around the stopped cars and that it was moving at a high rate of speed. Miss Cox estimated her own speed at about 30 miles per hour.

Under this state of the evidence we see no basis for a directed verdict or judgment n. o. v. in favor of Miss Cox. The argument that Cooper was negligent as a matter of law is wasted motion and moot in view of the jury's having found him negligent anyway. With respect to Miss Cox, we are of the opinion that regardless of which driver, if either, entered the intersection against the red light the jury could reasonably infer that each was negligent in other respects. That brings us to a consideration of the instructions.

■ Ordinarily, and for good reason, it does not behoove an appellate court to discuss questions about which no argument is made. There is, however, a persisting misconception with respect to instructions in this type of case which is in sore need of correction for the good of the law, and this case presents a timely opportunity to rec-

tify it without reversing the judgment as a consequence.

■ By Instruction II, to which there was no objection, the jury was told that it must find against either Cooper or Miss Cox or against both. The authority for such an instruction apparently originated in Hollis v. Bourne, 292 Ky. 578, 167 S.W. 2d 50 (1943), in which it was said:

> "The court in effect peremptorily instructed the jury to find for Bourne against either or both Almeeda Hollis and John Calvert, which was proper, for it is certain that one or both were legally responsible for his injuries unless he was contributorily negligent and could not recover of his host or he was engaged in a joint adventure or common purpose with her and the driver of her car, and he alone was negligent and Calvert was free from negligence. It is not contended the evidence supported either of these affirmative defenses."

The fallacy of the foregoing statement is that it overlooks the burden of proof. Though it may be uncontroverted that either A or B or both were negligent and that such negligence caused C's injuries, a verdict against either one must be predicated on the jury's belief from the evidence that he in particular was negligent. The certain knowledge that one or both were guilty cannot sustain the burden against either individual. That burden begins with the plaintiff and remains with the plaintiff. If he does not succeed in convincing the jury that A was guilty, or that B was guilty, or that both were guilty, he is not entitled to a verdict. The practical result of the type of instruction under discussion is to shift the burden to the defendants, and that is wrong. The onus cannot be thrust upon the jury to decide something the plaintiff has failed to prove to its satisfaction.[1]

In summary, the instructions should set forth the duties of each defendant and condition a verdict against him upon the jury's belief from the evidence that he failed to comply with one or more of those duties and that such failure was a substantial factor in causing the accident.

The jury in this case was instructed that it was the duty of each of the drivers to exercise ordinary care in the operation of his automobile, including the specific duties of lookout, reasonable control, reasonable speed, and ordinary care to avoid collision with other vehicles, to operate his automobile in a careful manner having due regard for the safety of other vehicles using the streets, and not to enter the intersection against a red traffic light.

■ Miss Cox's tendered instructions would have told the jury in substance (1) that she had the right to enter the intersection on the yellow light and that if she did so it was Cooper's duty to yield, and (2) that Cooper's lookout duty included the duty not only to look ahead, but also in the direction from which other vehicles were closely approaching the intersection, and "to see what he should see if he had looked," etc. The statements contained in these tendered instructions were, as the trial court remarked, valid legal propositions, and certainly they were well within counsel's province to argue to the jury, but they were not appropriate for inclusion in the court's instructions to the jury.

■ This was one of those cases in which it was quite possible that neither driver violated a red light. In the instance of wide streets in a busy city it probably is the rule rather than the exception that when the light changes to red someone who has entered on the green or yellow has not yet cleared the intersection. Technically, he has the right-of-way over conflicting traffic for which the light turns to green after he has lawfully entered the intersection, but it is not an absolute right-of-way and must yield to the exigencies of the giv-

---

1. For an analogous situation in a recent criminal case, see Marcum v. Commonwealth, Ky., 490 S.W.2d 346 (1973).

en situation. Hence it is enough, we think, to instruct in terms of the various duties specified by the trial court in this case.

■ It may sometimes be appropriate for instructions to define the rights of a litigant, as for example in the instance of a peace officer sued for assault incident to an arrest, but as a general proposition they should be couched in terms of duties only. Recovery hinges not on the question of who was within his rights, but who breached a duty. If the duty is simple enough to be stated without defining it in terms of the rights of one party or the other, that is all that is necessary, desirable, or proper. In this case the jury was instructed that each party had the duty of not entering on the red light, and as to the light that was enough. Unmistakably it had to mean that they had the right to enter on any other color, and if counsel felt that the jury was too thick to get the point all he had to do was to explain it in his summation. Our approach to instructions is that they should provide only the bare bones, which can be fleshed out by counsel in their closing arguments if they so desire.

■ In Schwartz v. Humphrey, Ky., 437 S.W.2d 750 (1969), we considered at some length the question of just when it is appropriate, vel non, to confine the instructions in a controlled intersection case to the narrow issue of which driver had the traffic light in his favor. When the evidence would support an inference that both vehicles entered the intersection properly, or that one or both of the drivers *thereafter* could have avoided the collision by the exercise of ordinary care (as it often may be when the width of the intersecting street is such that in the course of crossing it a driver has time to observe the other vehicle's intrusion and space in which to stop or turn aside), the instructions should not be limited to the issue of which one violated the red light. However, far from being inconsistent with that principle, the instructions given in this case were entirely in conformity with it.

■ Miss Cox contends also that the verdicts were excessive. In Modern Bakery, Inc., v. Brashear, Ky., 405 S.W.2d 742, 745 (1966), we upheld an award of $37,200 for the death of a small child with a life expectancy of 63 years. Here the jury awarded $40,000 for the death of a child with a life expectancy of just under 70 years. We cannot consider that to be excessive.

■ While it is true that Catherine Cooper did not prove any permanent impairment of her power to earn money, Miss Cox does not pursue in this court her objection to the instructions on that point. On the isolated question of excessiveness, therefore, we need only consider whether the award of $50,000 is out of line with her other injuries, principally pain and suffering. We think the shock and grief that must surely attend the killing of an eight-month child in its mother's womb is beyond human calculation. Quite aside from Catherine's also having been rendered incapable of bearing any more children, that alone is enough to sustain this verdict.

So much for the Cox appeal. We come now to Catherine's appeal and cross-appeal.

■ The judgment grants separate recoveries against the respective defendants, each in the amount of one-half the verdicts.[2] Catherine's cross-appeal contends that as to her (as distinguished from the defendants inter sese) the verdict found the defendants jointly rather than severally liable.

KRS 454.040 provides as follows:

"In actions of trespass the jury may assess joint or several damages against the defendants. When the jury finds

---

2. Except that the recoveries adjudged in favor of the estate of the unborn infant are reduced by the amounts which otherwise would have gone to the ultimate benefit of Clifford Cooper as the child's father.

several damages, the judgment shall be in favor of the plaintiff against each defendant for the several damages, without regard to the amount of damages claimed in the petition, and shall include a joint judgment for the costs."

KRS 412.030 provides thus:

"Contribution among wrongdoers may be enforced where the wrong is a mere act of negligence and involves no moral turpitude."

Questions No. 5 and No. 6 as submitted by the trial court and answered by the jury were as follows:

5—"Do you wish to apportion the total finding of damages . . . between the defendants according to the amount of negligence which you believe to be attributable to each defendant that you have found to be negligent?" [3]

Answer—"Yes."

6—"If your answer to the above question is 'yes' state, percentage-wise, how much of the total should be paid by:

"Defendant Arleliah F. Cox * 50%

"Defendant Clifford D. Cooper * 50%

"Total (The total of the answers must equal 100%) * 100%"

In Miller v. Hammary Furniture Company (D.C.E.D.Ky.1969), 299 F.Supp. 238, a wrongful death action against two drivers, the jury returned a verdict as follows: "We, the jury, do agree and find for Plaintiff. Negligence equal. Judgment $36,000 Funeral expenses $1,510.17 Total $37,510.17.". Against the contention that the jury intended a several verdict of half against each defendant, the court held that the words "Negligence equal" were mere surplusage and that the verdict was for a joint recovery. There, however, although the jury had been instructed that it could authorize recovery either "jointly in a single sum or separately in sums of different amounts," it assessed the damages in a single sum. Here the jury was not given the option in terms of separate sums of money, but was asked specifically if it desired to *apportion the damages between the defendants* and, if so, was directed to state how much of the total, percentage-wise, *should be paid* by each. This, we think, eliminated any possible doubt or ambiguity with respect to what the jury intended. We hold that the verdict was several and not joint.

■ It is suggested that the proper relationship between KRS 454.040 and KRS 412.030 is that as to the plaintiff the recovery is joint but as between the defendants it is according to the apportionment fixed by the jury. Indeed that seems to be the impression conveyed by a passage in Orr v. Coleman, Ky., 455 S.W.2d 59 (1970), appearing at 455 S.W.2d 61.[4] We hasten to correct that impression. From a literal construction of KRS 454.040 there can be little doubt that when the jury chooses to apportion its award between or

3. Though it was suggested in Central Passenger Ry. Co. v. Kuhn, 86 Ky. 578, 9 K.L.R. 725, 6 S.W. 441, 447 (1888), that the purpose of the statute (now KRS 454.040) is to permit the jury to "punish" the wrongdoers in proportion to their respective degrees of "guilt," and this thought has been reiterated in other cases including Orr v. Coleman, Ky., 455 S.W.2d 59, 61 (1970), which mentions the words "comparative culpability," when it is considered that mere culpability has no relationship to a tort except insofar as it is a *cause* of the injury, the only logical basis for an apportionment is *causation* rather than *degree of negligence.* Hence the form of instruction set forth in Orr v. Coleman, supra,

at 455 S.W.2d 61, 62, is preferable to the one used by the trial court in this case. It is preferable also to the instruction appearing as Sec. 603 (Joint defendants) in Stanley's Instructions to Juries, which provides no criterion whatever.

 * [Percentage figures entered by jury.]

4. "This [KRS 454.040] evinces, we believe, a long-standing policy that although their liability to the injured party may be joint and several, as between or among the joint tortfeasors themselves the burden should be apportioned according to their comparative culpability."

among joint tortfeasors their respective liabilities become fixed and finally settled, not only as to the plaintiff or plaintiffs but as among themselves, except for the costs of the proceeding, which the statute expressly reserves as a joint liability. The applicability of KRS 412.030 is thus limited to the costs alone. The form of the judgment entered by the trial court was correct.

On March 19, 1970, by leave of court Catherine filed an amended complaint alleging that at the time of the accident in question Clifford Cooper was the duly appointed and acting executor of the "Estate of Lillie M. Givens, Deceased," and was operating an automobile owned by the estate and within the scope of his duties as executor. The amended complaint then went on to reiterate the allegations and demands of the original complaint. It did not in so many words either name the executor as a defendant or ask that he be made a party, but apparently a summons was served on him. Cooper having failed to respond, on September 20, 1970, Catherine moved that her allegations "insofar as the defendant. Estate of Lillie M. Givens, is concerned, be taken as confessed," etc. On October 8, 1970, the day the trial commenced, Cooper moved that the action against him as executor be dismissed for the reason, among others, "that the defendant is improperly named, that is, that the suit should have been filed against the personal representative in his fiduciary capacity." The court ruled on the two motions as follows:

". . . The other ground is that the estate is not the proper Party Defendant, rather, it should be Mr. Cooper in his fiduciary capacity as executor. It should be noted that when the Amended Complaint was filed against the estate Mr. Cooper was served as executor and has had notice at all times of these proceedings. To avoid any real question on this issue Mr. Cooper, as executor, is now joined and made a Party Defendant to this action. Consequently, the Motions to dismiss are overruled. Mr. Benton's oral motion that the allegations of the Complaint, as amended, as to the estate and as to Mr. Cooper, as executor, be controverted of record is sustained."

The record before us does not show the caption of the amended complaint, so we do not know whether it named the executor as a party defendant. Neither he nor the estate is referred to in the body of the pleading as a defendant, though it does allege that "the estate of Lillie M. Givens is liable" for the damages to Catherine and to the estate of the child. The demand of the amended complaint refers to "the defendants" without naming them. Under the liberal rules of pleading which now prevail the amended complaint may have been sufficient against the executor, especially in view of his having received a summons. However, since the point is not briefed we do not feel obliged to research it and are not in a position to say that the manner in which the trial court disposed of the problem was in error. As it is, at the close of the evidence a verdict was directed in favor of the executor because the evidence was insufficient to support a finding of agency, and we feel no great disposition at this stage to give a party on a technicality something to which subsequent events proved he was not entitled on the merits.

Prior to the entry of the judgment counsel for Catherine Cooper as administratrix of the estate of the deceased infant filed an affidavit showing the costs of administration and costs of recovery,[5] including attorney fees based in part on a contingent fee contract. We need not cite the exact figures. The gist of the matter is that counsel contend that their fee "comes off the top" along with the other costs of the administration and recovery

---

5. This procedure was occasioned by the necessity for determining the amount to be excluded from the judgment by reason of the bar against Clifford Cooper's entitlement to share in any recovery resulting from his own negligence. See Bays v. Cox' Adm'r, 312 Ky. 827, 229 S.W.2d 737 (1950).

and that the amount to be deducted from the recovery is half of the balance, which is the amount to which Clifford would have been beneficially entitled [6] but for the policy of law that forbids his profiting from his own wrong. The trial court did not see it that way, and neither does this court.

 As an original proposition, a good argument can be made to the effect that in such a case the recovery to the estate should not be diminished at all, because if it is, as in this very example, the wrongdoer gains back half of what he loses. A better policy would pass what would otherwise be his share of the recovery on to those who would take it if he were dead. In this case that would be Catherine, the mother. We might have given favorable consideration to adopting such a policy had the administratrix brought the question to us, but sadly she did not, so we must live for the time at least with the ruling in Bays v. Cox' Adm'r, 312 Ky. 827, 229 S.W.2d 737 (1950), that the amount of the wrongdoer's beneficial interest is deducted from what he has to pay. This dooms the attorneys' claim as well. A contingent fee contract is based on the recovery, not the amount of the verdict (unless it specifically so provides). The amount of damages found by the verdict in this particular situation is no more than a provisional or working figure from which the recovery allowed in the judgment is to be computed. The fee cannot be assessed on the basis of that which is not only unrecovered but unrecoverable. If there is any possible twisting of KRS 411.130 into a contrary aspect it is defeated by simple logic.

The judgment is affirmed.

All concur.

---

6. For the benefit of those who may not have a passing familiarity with the laws of Kentucky, KRS 391.010 and 391.030 provide that the personal estate of one who dies intestate and without descendants shall pass equally to his father and mother, if both are living.