SOUTHEASTERN KENTUCKY BAPTIST HOSPITAL, INC., Movant,

v.

Linda GAYLOR, etc., et al., Respondents.

James D. DAWSON, M.D., et al., Movants,

v.

Linda GAYLOR, etc., et al., Respondents.

Linda GAYLOR, individually and as Administratrix of the Estate of Rachel Elizabeth Gaylor, a minor, deceased, Cross–Movant,

v.

James D. DAWSON, M.D. and Southeastern Kentucky Baptist Hospital, Inc., d/b/a Southeastern Kentucky Baptist Hospital, Cross–Respondents.

Nos. 86–SC–724–DG, 86–SC–727–DG and 86–SC–951–DG.

Supreme Court of Kentucky.

Sept. 8, 1988.

W.T. Atkins, Ronald L. Green, Lexington, for Southeastern Kentucky Baptist Hosp., Inc.

P. Joseph Clarke, Danville, for James D. Dawson, M.D.

Gary L. Gardner, Charles L. Cunningham, Jr., Louisville, for Linda Gaylor.

REVERSING

GANT, Justice.

Respondent and cross-movant, Linda Gaylor, was a 43–year–old expectant mother, classified as a "high risk case" because of her age and smoking propensities. She began consultation with the movant and cross-respondent, Dr. James D. Dawson, in January, 1982, and on March 1, 1982, developed complications. Dr. Dawson immediately placed Mrs. Gaylor in Southeastern Kentucky Baptist Hospital where she was examined, sent to a labor room and fitted with a fetal monitor. At the outset, the fetal signs were stable, and Dr. Dawson was called to deliver another baby who was in apparent distress. While Dr. Dawson was absent, the Gaylor baby began to show signs of fetal distress, and Mrs. Gaylor was moved to the delivery room. A Caesarean section was performed, but the fetus, named Rachel Elizabeth Gaylor, was stillborn.

This action was filed against the doctor and the hospital on October 26, 1983, nearly 20 months later, seeking compensatory damage for the destruction of the child's power to labor and earn money; for pain and suffering of the child; for the medical expenses of the mother, and for the mother's pain and suffering. Motions to dismiss were immediately filed by the movants herein, asserting that the claims were barred by the statute of limitations, particularly KRS 413.140(1)(a), (e). The lower court overruled said motions at this point, stating that "under the present status of the record it would be error to summarily dismiss the complaint." There ensued a discovery period of approximately one year, during which time interrogatories and depositions were utilized, particularly the depositions of Linda Gaylor and Dr. Dawson.

Movants herein then moved for a summary judgment, again based on KRS 413.-140, the one-year statute of limitations. The trial court, after reviewing the record and memoranda of counsel and after hear-

ing argument, granted summary judgment to both movants. On appeal the Court of Appeals reversed and permitted the administratrix to amend her complaint from pain and suffering to the child to pain and suffering to the unborn fetus.

## INDIVIDUAL CLAIM OF LINDA GAYLOR

The statute relied on by the movant is as follows:

> **413.140. Actions to be brought within one year.**—The following actions shall be commenced within one (1) year after the cause of action accrued:
>
> (a) An action for an injury to the person of the plaintiff, or of her husband, his wife, child, ward, apprentice or servant.
>
> \*   \*   \*   \*   \*   \*
>
> (e) An action against a physician, surgeon, dentist or hospital licensed pursuant to KRS Chapter 216 for negligence or malpractice.

The primary action of the mother is based on KRS 411.135, which permits recovery by the parent for loss of affection and companionship of a child in a wrongful death action. The alleged wrongful death occurred on March 1, 1982, and the one-year statute of limitations had expired by almost eight months unless tolled by one of the statutory provisions as forwarded by the respondent and cross-movant, Linda Gaylor, individually.

The first premise advanced by Linda Gaylor is found in KRS 413.170(1) which tolls the statute in the case of a person of "unsound mind." The evidence relating to the mental condition of Linda Gaylor is extremely sparse. In her answer to interrogatories and in a letter filed with the deposition of Dr. Dawson, we learn that Mrs. Gaylor was sent by Dr. Dawson to see a Dr. C. William Briscoe because of her depression and emotional distress. She states that she saw Dr. Briscoe on April 29, 1982, and that his diagnosis was "(1) hysteria and (2) secondary effective disorder with depressive syndrome with dysphoric mood and accompanying loss of interest in

usual interests, feelings of hopelessness, insomnia and loss of weight." "Dysphoric" is defined in *Schmidt's Attorney's Dictionary of Medicine*, Vol. 1, as "the feeling of being unwell; a vague but troubling discomfort. Nervous restlessness; the condition of being fidgety." There is no other proof by the respondent, Mrs. Gaylor; there is no deposition by Dr. Briscoe; and there is no evidence from other witnesses which would indicate that Mrs. Gaylor was of such unsound mind as to render her incapable of managing her own affairs. *See Stair v. Gilbert*, 209 Ky. 243, 272 S.W. 732 (1925). Once the statute of limitations is raised, the burden falls on the complainant to prove such facts as would toll the statute, and there is simply no proof in this record that Mrs. Gaylor was of unsound mind which would so toll the one-year statute of limitations. It is our opinion that the trial court was correct in granting the summary judgment against Linda Gaylor, individually.

## CLAIM BY LINDA GAYLOR AS ADMINISTRATRIX OF RACHEL ELIZABETH GAYLOR

It was apparently assumed at the instigation of this action that Rachel Elizabeth Gaylor lived a short while after birth, but it is now conceded that the child was stillborn. The original complaint was for personal injury to the child, but the Court of Appeals, in its opinion, seems to grant an amendment to permit an action for personal injury to a fetus. No cases were cited in which a claim for personal injury was allowed when the fetus was not born alive. However, under the circumstances of this case, we do not need to face this problem.

Commencing with *Louisville & N.R.R. Co. v. Brantley's Admr.*, 106 Ky. 849, 51 S.W. 585 (1899), this court has consistently held that "... unless a personal representative shall qualify within one year from the injury, the action is barred." *See also Wilson's Admr. v. Illinois Cent. R.R. Co.* Ky., 92 S.W. 572 (1906); *Totten v. Loventhal*, Ky., 373 S.W.2d 421, 422 (1963).

The law in Kentucky is well summarized in *Drake v. B.F. Goodrich Co.,* 6th Cir., 782 F.2d 638, 641, 642 (1986):

> It has been a longstanding requirement that the action must be filed by the personal representative of the estate within one year. Further, if no valid personal representative is appointed within one year of the date of death, any action for wrongful death dies. However, if a personal representative is appointed within one year of the date of death, he then is granted one year from the date of his appointment to file suit. If no suit is filed within that time, the action for wrongful death dies.

Mrs. Gaylor further contends that KRS 413.190(2)—which statute tolls the statute of limitations in the event someone "obstructs the prosecution of the action"—applies. We concur with the Court of Appeals when they say: "The evidence available to the trial court established that neither Dr. Dawson nor the hospital concealed any facts from [Linda Gaylor] nor misled her in any way."

We reverse the Court of Appeals, and affirm the judgment of the Whitley Circuit Court.

STEPHENS, C.J., and LAMBERT, LEIBSON, STEPHENSON and VANCE, JJ., concur.

LEIBSON, J., files a separate concurring opinion in which LAMBERT, J., joins.

WINTERSHEIMER, J., dissents and files a separate dissenting opinion.

LEIBSON, Justice, concurring.

I concur in the Majority Opinion insofar as it goes. However, I believe that we should clarify why KRS 413.140(2) does not apply to this case.

The statute provides "the cause of action [for medical negligence or malpractice] shall be deemed to accrue at the time the injury is first discovered or in the exercise of reasonable care should have been discovered." Discovery/accrual time means the point where the patient discovers that the condition (in this case a stillborn child) was not a natural event but an untoward event caused by human intervention. In this case if the facts were as claimed, the doctor's silence in failing to tell the mother that this was a normal, healthy fetus when he delayed delivery to take care of another patient, would toll the statute of limitations, *but for* the fact that the mother was suspicious from the beginning that the stillbirth was caused by the doctor's misconduct rather than by natural occurrence.

We should make it clear that a physician has an affirmative duty, born of the physician-patient relationship, a fiduciary relationship, to disclose to his patient medical information bearing on the cause of an occurrence such as this. The patient is dependent upon the physician for information necessary to discover whether an injury has occurred. The discovery rule in KRS 413.140(2) extends time for commencement of the running of the statute of limitations until appropriate information is provided.

I agree with the results in this case because, without being told by the doctor, from the beginning the mother suspected the doctor caused the stillbirth. The fact that the mother suspected from the beginning that an injury may have occurred forecloses the fact question under the statute of whether she should have been aware.

LAMBERT, J., joins in this concurring opinion.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because the Court of Appeals was correct in reversing and remanding the summary judgment. The cause of action by the mother individually for medical expenses and personal injury was not necessarily barred by the statute of limitations because there were genuine issues of material fact to be determined.

Following the prenatal death of her daughter, the mother was under sedation and then developed severe depression for which she was treated by a psychiatrist. She was unable to return to work for al-

most seven months. It is not clear when the mother first became concerned that the death of her daughter was the result of possible negligence on the part of the physician and the hospital. In her complaint, the mother alleges that the doctor and the hospital acted negligently causing the death of her daughter and demanded damages for wrongful death, personal injury to the deceased child and personal injury to the mother. The trial judge granted summary judgment finding as a fact that the mother was not incompetent or of unsound mind so as to toll the statute of limitations.

Summary judgment should be used only where no genuine issue of material fact exists and a party is entitled to judgment as a matter of law. Summary judgment should be cautiously invoked. *Rowland v. Miller's Adm'r*, Ky. 307 S.W.2d 3 (1957). Even though a trial judge may believe the party opposing the motion may not prevail at trial, he should not render a summary judgment if there is a material issue of fact. Summary judgment is not a substitute for trial. *Puckett v. Elsner*, Ky. 303 S.W.2d 250 (1957). The trial judge must examine the evidence, not to decide any issue of fact but to discover if a real issue exists. All doubts are to be resolved in favor of the party opposing the motion. A movant should not succeed unless a right to judgment is shown with such clarity that there is no room left for controversy and it is established that the adverse party cannot prevail under any circumstances.

Recently this Court has again spoken on the matter of the proper function of summary judgment. The majority stated that the proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at trial warranting a judgment in his favor. *Paintsville Hospital Co. v. Rose*, Ky., 683 S.W.2d 255 (1985). In my view this is the type of case that it would not be impossible to produce evidence warranting a judgment against the movant.

The party moving for a summary judgment has the burden of establishing that there is no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law. CR 56.

The essence of the mother's complaint is that the trial judge erred in finding that no issue existed as to whether she was under a medical disability sufficient to toll the statute of limitations pursuant to KRS 413.170. A person may be mentally disabled, within the meaning of the statute, when the disability is of such a nature as to show that the person is unable to manage their own affairs or to comprehend their legal rights and responsibilities. The existence of mental disability in this situation is a question of fact which does not depend on a finding of legal insanity or an adjudication of incompetence. *Carter v. Huffman*, Ky., 262 S.W.2d 690 (1953).

The evidence before the trial judge established that the mother had a history of nervous disorder and had previous psychiatric care; that as a 43–year–old high risk mother, she suffered severe physical and emotional trauma as a result of the death of the unborn child; that she was under sedation for several days after the birth; that she went into severe depression and was placed under the care of a psychiatrist; that her marriage broke apart and ultimately failed; and that she was unable to work for approximately seven months. I agree with the Court of Appeals that this evidence was sufficient to support an inference by a jury that the mother was not able to manage her own affairs or to understand her legal rights and responsibilities. Therefore it was reversible error for the trial judge to decide such a factual question in favor of the defendants rather than to allow a jury to decide the issue. Summary judgment was improper.

In reviewing this action, I believe we must recognize that the suit joined two separate causes of action pursuant to KRS 411.133. They were the mother's action for wrongful death and the personal injury action of the deceased child for injuries she received prior to her death. These actions arise out of the same transaction and were apparently treated as one cause of action by the trial judge in determining the summary judgment. Actions for wrongful

death and personal injury against a doctor or hospital may have different times from which the one year statute runs. *See* KRS 413.140(1)(e) and KRS 413.140(2).

The right of action for personal injury survives the death of the plaintiff, and in such cases, where the action is brought by the personal representative of the deceased, and where the deceased has died before the statute of limitations has run, the action may be brought by the personal representative within one year of the date that the representative is qualified. KRS 413.180. There is no statutory time limitation on the personal representative until qualification. Any limitation is solely a result of court interpretation and is subject to judicial change at any time. *See* my dissent in *Troxell v. Trammell*, Ky., 730 S.W.2d 525 (1987) for example. I agree with the observation by the Court of Appeals that it was error for the trial judge to treat the two separate causes of action as if the one-year statute of limitations had begun for both on the date the child died.

Concluding that the statute of limitations did not run on the plaintiff, the question remains as to whether an unborn child has a right to maintain an action for personal injuries when she was not born alive.

For over thirty years, Kentucky law has held that the viable unborn child is a person within the meaning of the statute "because such a child is a presently existing person, a living human being." *Mitchell v. Couch*, Ky., 285 S.W.2d 901 (1955). Once the stage of viability is reached, the unborn child is a legal person with a separate existence. *Orange v. State Farm*, Ky., 443 S.W.2d 650 (1969). The right of action for personal injury does not die with the person injured. KRS 411.140. It survives and may be pursued by a personal representative. It is illogical that a person means one thing under KRS 411.130, the Wrongful Death Statute, but something less in KRS 411.140. Clearly *Mitchell, supra*, and *Orange, supra*, provide a basis for the claim that the child is a person who is entitled to have her claim for personal injury determined by a jury.

There are a number of reasons why this specific question has not been previously considered in Kentucky.

The rights of unborn children is a rapidly expanding area of the law. As noted by Professor Prosser:

> Beginning in 1946 ... the child, if he is born alive, is now permitted in every jurisdiction to maintain an action for the consequences of prenatal injuries, and if he dies of such injuries after birth an action will lie for his wrongful death. *Prosser & Keeton on Torts*, p. 368 § 55, Prenatal Injuries (5th ed. 1984)

Certainly it is not a monumental step from the concept of live birth to the fact of death at birth when considered with the fact that medical authority has long recognized that an unborn child is an existence from the moment of conception. *See Prosser & Keeton on Torts* (5th ed. 1984) p. 367. Courts have only slowly begun the consideration of prenatal injury liability and are just now reaching the extended issues concerning survival actions.

In addition, this is a rapidly changing area of medicine. Survival rates for premature infants, technology monitoring equipment and intrauterine surgery on the infant is a medical reality. The law must adapt to these expanding medical opportunities so that all infants are protected. To cling to the assertion that a person must draw a breath in order to be protected by the law is not reasonable in the light of current medical science. As an example, Michigan has acknowledged the advances in medical science and recognized that the born-alive rule is outmoded, archaic and no longer serves a useful purpose, *People v. Guthrie*, 97 Mich.App. 226, 293 N.W.2d 775 (1980) in civil cases.

"The phenomenom of birth is not the beginning of life; it is merely a change in the form of life." *O'Neill v. Morse*, 385 Mich. 130, 188 N.W.2d 785 (1971).

> One need not be alive in order to be born; as the delivery of stillborn babies demonstrates. Neither is it possible for one to be born alive unless he is living prior to birth. *O'Neill, supra.*

Although *O'Neill* is a wrongful death case, the fundamental reasoning is sound and can clearly be applied to an injury case.

Another reason can be seen in that prior to 1968 a personal representative had to elect between pursuing a wrongful death claim or a survival action for personal injuries. KRS 411.133 allows both actions to be pursued. Considering all the circumstances, the pre–1968 choice would have favored a wrongful death action when it involved a prenatal death. Consequently, it is not surprising that this particular issue is only now coming before this Court.

Ultimately the courts of this state will recognize the question of fetal pain in human development process. This child was more advanced than many premature infants who survive traumatic abortions or other obstacles at birth. Certainly a good case can be developed regarding the pain suffered by any unborn child. *See* Verny & Kelly *The Secret Life of the Unborn Child* (N.Y.1981).

The Kentucky legislature has considered this kind of pain in the context of abortions. KRS 311.710(1) expresses a public policy of taking every precaution to ensure the protection of every viable unborn child aborted. KRS 311.770 prohibits saline abortions after the first trimester because of the pain it causes to the unborn child. These legislative concerns can be related to a proper interpretation of KRS 411.140.

*Mitchell, supra,* correctly indicates the true status of the law in regard to personhood in Kentucky. In that case the court held that a viable unborn child is a person because biologically such a child is a presently existing person, a living human being. *Mitchell* has been followed in *City of Louisville v. Stuckenborg,* Ky., 438 S.W.2d 94 (1968); *Orange, supra; Rice v. Rizk,* Ky., 453 S.W.2d 732 (1970).

The view directly or indirectly followed in many states which denies a cause of action for prenatal injuries has been severely criticized by legal writers as illogical and outdated. A comprehensive explanation of the proper Kentucky legal philosophy and case law in this area can be found in *Mitchell.* A more recent exposition of

essentially the same position, although in a criminal context, can be found in my dissenting opinion in *Hollis v. Commonwealth,* Ky., 652 S.W.2d 61 (1983).

As to the wrongful death action, the case law of this jurisdiction has held that the action for wrongful death accrues from the date of death and not from the appointment of the personal representative, and that KRS 413.140 is the applicable statute of limitations. *Lutes' Adm'r v. Gray–Von Allmen S. Milk Co.,* 254 Ky. 750, 72 S.W. 2d 720 (1934); *Vassill's Adm'r v. Scarsella,* 292 Ky. 153, 166 S.W.2d 64 (1942). Furthermore, KRS 413.180(1) is not applicable to wrongful death actions. *Faulkner's Adm'r v. L & N R.R. Co.,* 184 Ky. 533, 212 S.W. 130 (1919). The Majority Opinion cites *Drake v. B.F. Goodrich Co.* 782 F.2d 638 (6th Cir.1986) as summarizing the law in Kentucky. The *Drake* court at p. 642, states:

> However, if a personal representative is appointed within one year of the date of death, he then is granted one year from the date of his appointment to file suit. If no suit is filed within that time, the action for wrongful death dies.

Thus, *Drake* would hold that KRS 413.-180(1) applies to wrongful death actions. *Drake* reached this conclusion on an erroneous analysis of *Louisville & N R.R. Co. v. Brantley's Admr.,* 106 Ky. 849, 51 S.W. 585 (1899). *Brantley's Admr., supra,* was a personal injury action which analogized the wrongful death action and the personal injury action on the basis that the statute of limitations on either action was not tolled pending the appointment of a personal representative. In *Lutes' Adm'r, supra,* and *Faulkner's Adm'r., supra,* the courts held the extension granted to administrators for personal injuries does not apply to wrongful death actions.

However, KRS 411.130 does not contain a limitation on wrongful death actions. This Court has recently stated in *Ellis v. Ellis,* Ky., 752 S.W.2d 781 (1988) that the courts may not engage in tortured interpretation of existing statutes to provide an appropriate statute of limitations.

There being no legislative statute of limitations on wrongful death actions and Kentucky recognizing the right to maintain such an action for an unborn child, the wrongful death action was improperly dismissed.

The decision of the Court of Appeals should be affirmed so that the matter could be returned for a trial on all appropriate factual issues.